

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2005

# Romero v. Allstate Corp

Precedential or Non-Precedential: Precedential

Docket No. 04-2161

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Romero v. Allstate Corp" (2005). *2005 Decisions*. Paper 1276.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1276

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2161

———

GENE ROMERO; JAMES T. BEVER;
ROGER T. BOYD; RICHARD A. CARRIER;
PAUL R. COBB; CRAIG K. CREASE;
SYLVIA CREWS-KELLY; DWIGHT F. ENGLISH;
DOUGLAS F. GAFNER; RONALD W. HARPER;
MICHAEL P. KEARNEY; THOMAS A. KEARNEY;
LARRY H. LANKFORD, SR.; DAVID C. LAWSON;
NATHAN R. LITTLEJOHN, II; REBECCA R. MASLOWSKI;
CRAIG A. MILLISON; JAMES E. MOOREHEAD;
EDWARD T. MURRAY, III; CAROLYN L. PENZO;
CHRISTOPHER L. PERKINS; RICHARD E. PETERSON;
JAMES P. PILCHAK; PAULA REINERIO;
PAULA M. SCHOTT; DONALD L. TRGOVICH;
RICHARD S. WANDNER; TIMOTHY WEISMAN;
ERNIE P. WENDT; ANTHONY T. WIKTOR;
JOHN W. WITTMAN; RALPH J. WOLVERTON,

Appellants

v.

THE ALLSTATE CORPORATION;
ALLSTATE INSURANCE COMPANY;
AGENTS PENSION PLAN;

ADMINISTRATIVE COMMITTEE,
IN ITS CAPACITY AS ADMINISTRATOR
OF THE AGENTS PENSION PLAN

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cv-06764)
District Judge:  Honorable John P. Fullam

————

Argued January 24, 2005
Before:  SCIRICA, *Chief Judge*, RENDELL,
and FISHER, *Circuit Judges*.

(April 14, 2005)

Paul Anton Zevnik
Michael J. Wilson
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004

Daniel Wolf (Argued)
Sprenger & Lang
1614 Twentieth Street, N.W.
Washington, DC  20009
        *Attorneys for Appellants*

Richard C. Godfrey
Kirkland & Ellis
200 East Randolph Drive, Suite 6500
Chicago, IL  60601

Peter A. Bellacosa (Argued)
Kirkland & Ellis
153 East 53rd Street
Citigroup Center
New York, NY  10022

Edward F. Mannino
Katherine Menapace
Akin, Gump, Strauss, Hauer & Feld
2005 Market Street
One Commerce Square, Suite 2200
Philadelphia, PA  19103
        *Attorneys for Appellees*

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

A group of plaintiffs seeking to represent different classes of current and retired insurance agents of the Allstate Insurance Company brought this action alleging four counts under the Employee Retirement Income Security Act of 1974 ("ERISA") against The Allstate Corporation, the Allstate Insurance Company, the Agents Pension Plan ("Pension Plan") and the Administrative Committee in its capacity as administrator of the Agents Pension Plan

3

("Plan Administrator") (collectively herein "Allstate"). The three ERISA non-fiduciary duty claims, alleged under 29 U.S.C. §§ 1054(g)(2) and (h), were dismissed by the United States District Court for the Eastern District of Pennsylvania as time-barred on the face of the complaint. The ERISA breach of fiduciary duty claim, alleged under 29 U.S.C. § 1104(a), was also dismissed on the ground that it was duplicative of claims in two related actions then pending before the District Court. We will reverse and remand for further proceedings and in so doing make explicit that the federal discovery rule should be used to determine the date of accrual of the non-fiduciary duty claims alleged here.

## I. FACTS

For many years Allstate typically hired, as employees, the agents who sold its policies and handled its claims. These "employee agents" operated under one of two types of employment contracts known as "R830" and "R1500." At some point, Allstate determined it would be better served by agents operating as "independent contractors," and thereafter, all newly hired agents were independent contractors providing services to Allstate under a contract known as "R3001." Beginning in the early 1990's, Allstate also set out to persuade current employee agents to convert to independent contractor status.

Allstate maintained a Pension Plan subject to ERISA. Prior to 1991, full-time employee agents became participants in the Pension Plan after one year of service and were fully vested after five years. The pre-1991 version of the Pension Plan contained an attractive early retirement feature under which agents with at least 20 years of continuous "credited service" could opt to retire at age 55 and receive an enhanced early retirement benefit which assumed the retiree had continued to work until age 63. That version of the Pension Plan

4

provided that "[a]ll service" with Allstate "shall count as 'Credited Service'" for purposes of accruing retirement benefits, including the enhanced early retirement benefit.

In November 1991, Allstate amended the Pension Plan (retroactive to January 1, 1989) to phase out the enhanced early retirement benefit over a period of eight years ("Phase-Out Amendment").[1]  The Phase-Out Amendment was re-adopted in December 1994.  Plaintiffs contend that at this time, however, they could not have been affected by the Phase-Out Amendment because they had not yet reached 55 years of age and completed 20 years of credited service.

Also in December 1994, the Pension Plan was amended to alter the definition of "credited service." The new definition provided that only "an Agent's employment [by Allstate] as an employee shall count as 'Credited Service'" ("Credited Service Amendment").  A

---

[1]The Phase-Out Amendment reduced the enhanced early retirement benefit for employee agents who attained eligibility for early retirement after January 1, 1991 and eventually eliminated it for employee agents retiring after 1999.  Allstate contends that the Phase-Out Amendment was adopted initially in November 1991 and re-adopted in December 1994 in response to the Tax Reform Act of 1986 ("TRA-86") and related events, including the litigation in *Scott v. Administrative Comm. of the Allstate Agents Pension Plan*, No. 93-1419 CIV-J-10, 1995 WL 661096 (M.D. Fla. 1995), *rev'd*, 113 F.3d 1193 (11th Cir. 1997).  Why the amendment was adopted and re-adopted, and how that activity was undertaken, has no bearing on our decision in this appeal which focuses on the statute of limitations issues that have arisen at this threshold stage of the litigation.  We do, however, appreciate that Allstate intends to defend the amendment's legality and effectiveness in terms of TRA-86 and related events.

5

new appendix added to the written Pension Plan explained that agents who entered into an agreement to provide "substantially similar" services to Allstate as independent contractors under an R3001 contract would be denied early retirement. Thus, newly hired agents and former employee agents who had converted to the R3001 contract would no longer have their service to Allstate count for purposes of early retirement. In January 1996, Allstate amended the Pension Plan again, this time adding a new provision to make "employee" a defined term, and to exclude therefrom any person providing services to Allstate under an R3001 contract ("Employee Definition Amendment").

As the decade advanced, Allstate stepped up it efforts to persuade remaining employee agents to convert to independent contractor status. In 1996, Allstate announced it would terminate the contracts of some 1,600 employee agents in California unless they converted or retired. In November 1999, Allstate embarked on a nationwide conversion effort, in the wake of which most remaining employee agents either converted and signed a comprehensive release of all claims against Allstate in conjunction therewith, or retired. Plaintiffs contend that it was only at this time that they could have known how the Credited Service Amendment would affect them because it was only then that they converted from employee to independent contractor status and only then that they were denied credited service under the Plan. Allstate and its plan administrator consistently represented to the employee agents considering conversion during this time period that any service to Allstate provided after conversion would not count towards early retirement under the Pension Plan.

## II. PROCEDURAL HISTORY

On December 20, 2001, thirty-two named plaintiffs, seeking to represent three different classes, instituted the present action. Plaintiffs in the first group, who had converted to the R3001 contract at a time when they had accrued less than 20 years of credited service, sought to represent a class of "converted agents." Plaintiffs in the second group, who had retired rather than convert to the R3001 contract at a time when they had accrued less than 20 years of credited service, sought to represent a class of "retired agents." Plaintiffs in the third group (which included all of the named plaintiffs) sought to represent a class of employee agents who (1) were hired by Allstate as employee agents before January 1, 1992, (2) remained in Allstate's service as employee agents after December 31, 1991, and (3) had not yet attained age 55 by December 31, 1991 (the "enhanced early retirement benefit class").

The Complaint contained four counts under ERISA. In Count I, plaintiffs seeking to represent the class of converted agents alleged that the 1994 Credited Service Amendment to the Pension Plan and the 1996 Employee Definition Amendment to the Pension Plan violated ERISA § 204(g)(2), 29 U.S.C. § 1054(g)(2), because the amendments had the effect of "eliminating or reducing an early retirement benefit."[2] In Count II, plaintiffs seeking to represent the

_____

[2]The version of ERISA § 1054(g) in effect when the Complaint in this action was filed provided in full:

> (g) Decrease of accrued benefits through amendment of plan
>
> > (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment

described in section 1082(c)(8) or 1441 of this title.

(2) For purposes of paragraph (1), a plan amendment which has the effect of--

> (A) *eliminating or reducing an early retirement benefit* or a retirement-type subsidy (as defined in regulations), or
> (B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in subparagraph (B) (other than a plan amendment having an effect described in subparagraph (A)).

(3) For purposes of this subsection, any--

> (A) tax credit employee stock ownership plan (as defined in section 409(a) of Title 26), or
> (B) employee stock ownership plan (as defined in section 4975(e)(7) of such Code),

class of retired agents alleged that Allstate and its plan administrator violated the fiduciary duty provision of ERISA § 404(a), 29 U.S.C. § 1104(a), during the conversion efforts in representing to employee agents choosing between conversion or retirement that any service provided under an R3001 contract would not count towards the Pension Plan. In Count III, plaintiffs seeking to represent the enhanced early retirement benefit class alleged that the 1991 Phase-Out Amendment violated ERISA § 204(g) because it too had the effect of "eliminating or reducing an early retirement benefit."[3] In

> shall not be treated as failing to meet the requirements of this subsection merely because it modifies distribution options in a non-discriminatory manner.

29 U.S.C. § 1054(g) (West 2001) (emphasis added). Subsection (g) was amended in 2001, applicable to "years beginning after Dec. 31, 2001." *See* Historical and Statutory Notes to 29 U.S.C. § 1054 (West 2004) (citing section 645(a)(3) of Public Law 107-16). These amendments added an additional sentence to ERISA § 1054(g)(2), providing: "The Secretary of the Treasury shall by regulations provide that this paragraph shall not apply to any plan amendment which reduces or eliminates benefits or subsidies which create significant burdens or complexities for the plan and plan participants, unless such amendment adversely affects the rights of any participant in a more than de minimis manner." In addition, the amendments added new subparagraphs (g)(4) and (g)(5) to address the applicability of subsection (g) to changes in plan distribution forms. *See* 29 U.S.C. § 1054(g) (West 2004).

[3]Counts I and III, alleging violations of ERISA § 1054(g)(2), also alleged violations of Section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. § 411(d)(6). Section 411 provides in subsection

9

(d)(6), in relevant part (in language mostly tracking that of ERISA § 1054(g)):

> (6) Accrued benefit not to be decreased by amendment.
>> (A) In general. A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan, other than an amendment described in section 412(c)(8), or section 4281 of the [ERISA].
>> (B) Treatment of certain plan amendments. For purposes of subparagraph (A), a plan amendment which has the effect of
>>> (i) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
>>> (ii) eliminating an optional form of benefit,
>> with respect to the benefits attributable to before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. The Secretary of the Treasury shall by regulations provide that this paragraph shall not apply to any plan amendment which reduces or eliminates benefits or subsidies which create significant burdens or complexities for the plan and plan

10

Count IV, the same plaintiffs as in Count III (i.e., the enhanced early retirement benefit class) alleged that Allstate and its plan administrator violated ERISA § 204(h), 29 U.S.C. § 1054(h),[4] by

> participants, unless such amendment adversely affects the rights of any participant in a more than de minimis manner. The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in clause (ii) (other than a plan amendment having an effect described in clause (i)).

26 U.S.C. § 411(d)(6)(A) and (B).

[4]The version of ERISA § 204(h) applicable to the 1991 Phase-Out Amendment provided that "[a] plan ... may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date" to, *inter alia*, each plan participant. 29 U.S.C. § 1054(h) (West 1999). ERISA § 204(h) was substantially revised in 2001 by amendment applicable to "any plan amendment taking effect on or after June 7, 2001 ..." *See* Historical and Statutory Notes to 29 U.S.C. § 1054 (referring to Section 659(c) of Public Law 107-16). The revised ERISA § 204(h) did not alter the basic notice requirement, but rather set forth requirements for the notice itself and further provided that:

> ... [i]n the case of any egregious failure to meet any requirement of this subsection with respect to any plan amendment, the provisions of the applicable pension plan shall be applied as if such plan amendment entitled all applicable individuals to the greater of
> > (i)      the benefits to which they would have been entitled without regard to such

11

failing to provide notice to plan participants when it added the 1991 Phase-Out Amendment, which was alleged to have the effect of significantly reducing "the rate of future benefit accrual." *See* A. 65 (Compl. ¶ 120) ("The November 1991 amendments, under which Allstate purported to phase out and ultimately eliminate the [enhanced] early retirement benefits, caused a significant reduction in early retirement benefits or subsidies that agents accrued under the Pension Plan"); *see also* ERISA § 204(h)(9), 29 U.S.C. § 1054(h)(9). Allstate moved to dismiss each of the four counts under Fed.R.Civ.P. 12(b)(6) on numerous grounds, including that the non-fiduciary duty claims alleged in Counts I, III and IV were time-barred.

Pending before the District Court at the same time as the present action were two other actions challenging the legality of Allstate's conduct over the course of the conversion process. In the first action – dubbed "*Romero I*" – twenty-nine plaintiffs (including almost all of the same plaintiffs in the present action), also seeking to represent various classes, alleged seven counts against Allstate and its President/Chief Executive Officer. The *Romero I* plaintiffs sought to invalidate the comprehensive release signed by agents who had converted on the grounds that it violated ERISA § 510, 29 U.S.C. § 1140,[5] the Age Discrimination in Employment Act ("ADEA"), and

---

                              amendment, or
      (ii)     the benefits under the plan with regard
                 to such amendment

29 U.S.C. § 1054(h)(6)(A) (West 2004 Supp.). Additionally, ERISA § 204(h) as amended provides that "[f]or purposes of this subsection, a plan amendment which eliminates or reduces any early retirement benefit or retirement-type subsidy (within the meaning of subsection (g)(2)(A)) shall be treated as having the effect of reducing the rate of future benefit accrual." ERISA § 204(h)(9), 29 U.S.C § 1054(h)(9).

[5]This section of ERISA provides in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a

the common law. They also alleged interference with employment and retaliation in violation of ERISA § 510, discriminatory treatment in violation of the ADEA, breach of the R830 and R1500 contracts, and breach of a fiduciary duty described in the *Romero I* complaint as one of "good faith and fair dealing" said to have arisen from the "special confidence" reposed in Allstate by class members. In the second pending action – dubbed "the EEOC action" – the Equal Employment Opportunity Commission brought suit against the Allstate Insurance Company, alleging violations related to the conversion process of Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, the ADEA, and the Americans with Disabilities Act.

The District Court dismissed the present action in a single paragraph of a larger memorandum opinion addressing motions then pending in all three actions, reasoning:

> To the extent that the plaintiffs in [the present action] complain about the amendments to the pension plan made in 1991, 1994, and 1996, their complaint, filed December 20, 2001 is, *on its face*, *time-barred*. To the extent that they lost pension entitlements when they became independent contractors or former employees, that consequence would be an element of damages if they establish that their change of status was a breach of contract or otherwise illegal – claims which are being asserted in *Romero I* and the EEOC

---

> participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ..., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.

action. I conclude that [the present action] should be dismissed in its entirety.

(emphasis added). This appeal followed.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over the present action pursuant to 28 U.S.C. § 1331 and ERISA §§ 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) & (f). This Court has appellate jurisdiction to review the final order of the District Court pursuant to 28 U.S.C. §§ 1291 and 1294(1). We exercise plenary review of the District Court's dismissal of Counts I, III and IV of the Complaint on statute of limitations grounds under Fed.R.Civ.P. 12(b)(6). *Lake v. Arnold*, 232 F.3d 360, 365 (3d Cir. 2000). For purposes of conducting this review, we take all facts alleged in the Complaint as true and afford plaintiffs, as the non-movants, the benefit of all reasonable inferences to be drawn therefrom. *See id.* We also exercise plenary review over the District Court's determination that Count II was duplicative of the claims then pending in *Romero I* and the EEOC action, as that conclusion was based on a legal characterization of the Complaint.

## IV. ACCRUAL

### A. Applicable Limitations Periods

ERISA contains a statute of limitations for claims, like Count II here, alleging breach of fiduciary duty under ERISA § 404(a).[6]

---

[6]Such claims must be brought within:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the

ERISA does not, however, contain a statute of limitations for non-fiduciary duty claims, such as those alleged in Counts I, III, and IV. In *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1180 (3d Cir. 1992), this Court instructed that the "limitations period applicable to the forum state claim most analogous to the ERISA claim at hand" is to be borrowed and applied to an ERISA non-fiduciary duty claim. In *Gluck*, this Court held that an ERISA § 204(g) claim, said to involve "complex issues of statutory interpretation," had no counterpart in Pennsylvania law, and therefore the applicable statute of limitations was Pennsylvania's general six-year period. *See* 960 F.2d at 1181-82 (applying 42 Pa. C.S.A. § 5527 (Purdons Supp. 1991)). *Gluck* thus dictates that Counts I and III of the Complaint in the present action, which allege violations of ERISA § 204(g), are subject to a six-year limitations period.

This Court has never addressed the limitations period applicable to an ERISA § 204(h) claim; indeed it does not appear that any court has done so. The parties in the present action appear to assume that Pennsylvania's six-year limitations period applicable to Count III applies also to the ERISA § 204(h) claim alleged in Count IV, as both challenges involve the same plan amendment. The first step in borrowing a local time limitation is to determine the "state claim most analogous to the ERISA claim pursued." *Gluck*, 960 F.2d at 1179. The parties have not identified an analogous state law claim and we have not found one. We do note, however, that as pleaded, and as characterized by plaintiffs before this Court, the claims in Count III and IV appear to be intrinsically tied together in that it is the *effect* of the amendment challenged in Count III that plaintiffs say triggered the notice requirement alleged to have been violated in Count IV. In this situation, we deem it appropriate to apply

---

> breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

ERISA § 413, 29 U.S.C. § 1113 (emphasis added). This statute of limitations governs Count II.

15

Pennsylvania's six-year limitations period. *See* 42 Pa.C.S. § 5527 ("Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years"); *see also Gluck*, 960 F.2d at 1182.[7]

## B.     Date of Accrual

The principal issue before us is when the causes of action alleged in Counts I, III, and IV accrued for limitations purposes – in other words, when the clock on the applicable six-year statute of limitations began to tick. The date of accrual of the ERISA non-fiduciary duty claims asserted is determined as a matter of federal common law. *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066-67 (3d Cir. 1995) (stating, in context of a claim to compel arbitration under the Federal Arbitration Act, "[w]hile a state statute of limitations may be 'borrowed' for a federal claim, federal, not state, law governs as to when the cause of action accrues"); *see also Admin. Comm. of the Wal-Mart Stores, Inc. v. Soles*, 336 F.3d 780, 785 (8th Cir. 2003) (stating in ERISA action, "[f]ederal law also determines when the cause of action accrues"); *Union Pacific R.R. Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir.) (stating in ERISA action, "despite determining the limitations period by analyzing state law, this Court looks to federal common law to determine the time at which a plaintiff's federal claim accrues"), *cert. denied*, 525 U.S. 817 (1998).

---

[7]Because we recognize that an ERISA § 204(h) claim can arise in a context independent of ERISA § 204(g)(2), *see, e.g.*, *Davidson v. Canteen Corp.*, 957 F.2d 1404 (7th Cir. 1992) (challenge to the effectiveness of a pension plan amendment that significantly reduced the rate of future benefit accrual solely on the ground that the employer failed to give the required notice), we do not decide the statute of limitations applicable to every possible iteration of an ERISA § 204(h) claim, but only that applicable to the ERISA § 204(h) claim made here.

The District Court did not explicate its reasoning for dismissing Counts I, III and IV of the Complaint as time-barred. We assume, as do the parties before us, that the decision was based at least in part on this Court's decision in *Gluck*. To the extent, however, that the District Court interpreted *Gluck* to dictate that Counts I, III and IV accrued on the date the challenged amendments were made to the Pension Plan, we reject this reading. *Gluck* held only that the ERISA § 204(g) claim alleged in that case accrued, *at the earliest*, on the date of the plan amendment. *See* 960 F.2d at 1182 ("The employees' claims asserting failure to vest the residual, failure to distribute the surplus, and improper reduction of early retirement benefits are claims founded on complex issues of statutory interpretation. They are subject to Pennsylvania's six-year statute of limitations. *Because they accrued at the earliest on July 1, 1984 – the effective date of the amendment – they have been timely interposed*.") (emphasis added). There was no need to determine in *Gluck* exactly when the claim accrued because, even assuming the earliest date (i.e., the date the plan was amended), the claim was timely interposed.[8] Having clarified that *Gluck* does not dictate the dismissal of Counts I, III, and IV, we turn now to identifying the

---

[8]This Court also stated in *Gluck*, "[t]he *validity* of the employees' claims based on section 204(g), 29 U.S.C. § 1054(g), to non-contributory and contributory early retirement benefits under [the plan] *depends solely on the actual date of adoption of the 1984 amendment*." 960 F.2d at 1185 (emphasis added). This statement, however, when placed in proper context, does not express a legal principle that an ERISA § 204(g) claim accrues on the date of a plan amendment. Rather, the date of the plan amendment was relevant in this portion of *Gluck* for purposes of determining whether ERISA applied. *See id.* ("ERISA permitted the reduction of early retirement benefits prior to July 31, 1984, but not after. Because an ERISA plan document may not be amended informally, a formal amendment adopted after July 30, 1984, would be ineffective, even if dated retroactively. It appears, however, that the employees failed to raise this argument in the district court. Their complaint alleges July 1, 1984, as the effective date of amendment and is silent as to the date the amendment was adopted.") (internal citations omitted).

17

proper standard for determining when those claims accrued for limitations purposes.

Typically in a federal question case, and in the absence of any contrary directive from Congress, courts employ the federal "discovery rule" to determine when the federal claim accrues for limitations purposes. *See Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127-28 (3d Cir. 1988) (citing, e.g., *Sandutch v. Muroski*, 684 F.2d 252 (3d Cir. 1982)), *abrogated on other grounds by Klehr v. A.O. Smith Corp*, 521 U.S. 179 (1997); *see also Union Pacific*, 138 F.3d at 330-31 (citing, *inter alia*, *Conners v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991) (listing cases (including *Houghton*) in which eight federal courts of appeals had held that "the discovery rule is the general accrual rule in federal courts ... [and] is to be applied in all federal question cases") and *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (holding that the discovery rule is "read into statutes of limitations in federal-question cases (even when those statutes of limitations are borrowed from state law)")); *see also Admin. Comm. of the Wal-Mart Stores*, 336 F.3d at 786 (citing *Union Pacific* and applying the discovery rule). Under the general formulation of the discovery rule, a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim. *See, e.g., Union Pacific*, 138 F.3d at 330. The rule that has developed in the more specific ERISA context is that an ERISA non-fiduciary duty claim will accrue after a claim for benefits due under an ERISA plan has been made and formally denied. *See id.* at 330 (citing *Cotter v. Eastern Conf. of Teamsters Retirement Plan*, 898 F.2d 424 (4th Cir. 1990)); *see also Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996); *Tanzillo v. Local Union 617, Int'l Broth. of Teamsters*, 769 F.2d 140, 143-44 (3d Cir. 1985). Occasionally, however, an ERISA non-fiduciary claim will accrue before a formal application is made and/or before benefits are formally denied, such as "when there has been a repudiation [of the benefits] by the fiduciary which is *clear* and made known to the beneficiar[y]." *Miles v. N.Y. State Teamsters Conf. Pension and Retirement Fund*, 698 F.2d 593, 598 (2d Cir.) (internal citations omitted, emphasis in the original), *cert. denied*, 464 U.S. 829 (1983). *See also Daill*, 100 F.3d

18

at 65-67 ("a cause of action accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary"); *Union Pacific*, 138 F.3d at 330-31 (citing *Miles*); *Carey v. Int'l Broth. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47-48 (2d Cir. 1999) (listing cases using the clear repudiation standard in the absence of a formal application for benefits). This "clear repudiation" concept is consistent with the federal discovery rule and, in the specific context of ERISA, avoids a myriad of ills that would accompany any rule that required the denial of a formal application for benefits before a claim accrues. *See, e.g.*, *Daill*, 100 F.3d at 66-67; *Carey*, 201 F.3d at 48-49. We too have applied the "clear repudiation" concept in numerous cases involving ERISA, s*ee Henglein v. Colt Industries Operating Corp.*, 260 F.3d 201, 214 (3d Cir. 2001) ("In the circumstances here, where there was an outright repudiation at the time the employees' services were terminated, it is reasonable to expect that the statute of limitations [on plaintiffs' claim that they were entitled to shut-down benefits under an ERISA-governed plan] began to run at that point."), *cert. denied*, 535 U.S. 955 (2002); *see also In re Unisys Corp. Med. Ben. ERISA Litigation*, 242 F.3d 497 (3d Cir.) (applying the federal common law discovery rule in the context of ERISA fiduciary duty claim), *cert. denied*, 534 U.S. 1018 (2001), and find it appropriate to do so here. Accordingly, we hold that when an ERISA plan is amended but the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event, the cause of action of the employee will not accrue until such time as the employee knew or should have known that the amendment has brought about a clear repudiation of certain rights that the employee believed he or she had under the plan.

We have not had a prior opportunity to consider whether the discovery rule should govern in the specific context of an ERISA § 204(g) claim or whether such a claim should be deemed to have accrued as of the date of adoption or effective date of the challenged plan amendment. The basic policies undergirding limitations periods generally, such as rapid resolution of disputes, repose for defendants, and avoidance of litigation involving lost or distorted evidence, may be said to favor a rule that would tie the date of accrual to the date of

the plan amendment, and such concerns are magnified in the context of an ERISA pension plan funded on a long-term, prospective basis. Additionally, there is intrinsic appeal to adopting such a rule for an ERISA § 204(g) claim because a claim pursuant to that provision challenges the amendment itself as having the effect of "eliminating or reducing an early retirement benefit." Other courts, however, have rejected a rule that would tie the date of accrual to the date of amendment, both in the context of claims alleged under ERISA § 204(g) and other ERISA non-fiduciary duty claims. *See, e.g., Meagher v. Int'l Assoc. of Machinists and Aerospace Workers Pension Plan*, 856 F.2d 1418 (9th Cir. 1988) (reversing dismissal of ERISA § 204(g) claim as time-barred from the date of amendment and reasoning that plaintiffs were harmed by the wrongful application of the challenged amendment, not by its enactment), *cert. denied*, 490 U.S. 1039 (1989); *Laurenzano v. Blue Cross and Blue Shield of Mass., Inc. Retirement Income Trust*, 134 F. Supp.2d 189 (D. Mass. 2001) (refusing to find ERISA challenge to lump sum distribution paid in lieu of an annuity that did not include a cost of living adjustment component commenced in 1999 time-barred even though the lump sum option had been in place since 1976); *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F. Supp. 258 (S.D.N.Y. 1997) (refusing to find ERISA challenge to pension benefit calculation formula commenced in 1990 time-barred even though formula had been in place since 1976), *abrogated on other grounds by Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999)). We find the reasoning of these cases to be persuasive. A rule that unwaveringly ties the date of accrual to the date of amendment would have the undesirable effect of requiring plan participants and beneficiaries "likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential [p]lan errors and abuses." *DeVito*, 975 F. Supp. at 265. It would also tend to preclude claims by those who commenced employment after the limitations period applicable to the particular ERISA claim has elapsed. *See id.* at 265 n.9. Additionally, it would impose an unfair duty of clairvoyance on employees, such as those in this case, who allege that an amendment's detrimental effect on them was triggered not at the time of its adoption, but rather at some later time by a subsequent event. We eschew such a rule in

20

light of the underlying purposes of ERISA and its disclosure requirements, *see In re Unisys Corp. Retiree Med. Ben. ERISA Litigation*, 58 F.3d 896, 901 (3d Cir. 1995) ("ERISA is a comprehensive statute enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits") (internal citations omitted); *see also Hunger v. AB*, 12 F.3d 118, 119 (8th Cir. 1993) ("Congress enacted ERISA to ensure that an employee would not lose fully vested, accrued benefits in the event the employer terminated or amended its pension plan"), and accordingly hold that the federal discovery rule, which includes the "clear repudiation" concept, applies in the specific context of the ERISA § 204(g) claims alleged here.

Use of the federal discovery rule to discern the date of accrual does not necessarily prevent the date of amendment from serving as the accrual date for an ERISA § 204(g) claim, as there may be circumstances under which benefits are clearly repudiated as of that date. On the face of this Complaint, however, one cannot determine when such clear repudiation occurred. As to that portion of Count I which challenges the 1994 Credited Service Amendment, the Complaint does not allege when or if the plaintiffs were notified that such amendment had been adopted and does not allege, or allege other facts from which it might be inferred, that plaintiffs knew or should have known that they would someday be forced to convert to independent contractor status prior to the conversion drive of 1999, such that they might understand that the amendment would apply to them.[9] While facts may be developed from which one could conclude

---

[9]As to that portion of Count I which challenges the 1996 Employee Definition Amendment, it is not clear to us on the present record whether a challenge under ERISA § 204(g) can be made to that amendment standing alone since it appears that the 1996 amendment only purported to clarify what the 1994 Credited Service Amendment actually did – i.e., prevent agents who were not employees from accruing credited service. If the plaintiffs can explain how the 1996 Employee Definition Amendment had an impact independent of the 1994 Credited Service Amendment, then the District Court should reconsider its dismissal of that portion of Count I challenging the

that clear repudiation did occur before the actual act of conversion, it is premature at this point to dismiss Count I on limitations grounds. As to Count III, which challenges the Phase-Out Amendment, the Complaint specifically alleges that notice was not given to participants and further did not allege facts from which it might be inferred that plaintiffs knew or should have known the effect such amendment would have on their benefits at some point before (roughly) December 1995 (i.e., six years before the Complaint was filed in December 2001). Again, while facts may be developed from which one could conclude that clear repudiation did occur at a time which renders the subsequent assertion of the claim untimely, it is premature at this point to dismiss Count III on limitations grounds.

The ERISA § 204(h) claim in Count IV is certainly of a different character than the ERISA § 204(g) claims raised in Counts I and III, and for that reason, Allstate urges this Court to recognize an accrual date tied to the procedural requirement of the statute as opposed to one discerned using the federal discovery rule. Specifically, relying on the language of ERISA § 204(h), Allstate contends that the date of accrual should be the date on which notice should have been given – i.e., 15 days before the effective date of the Phase-Out Amendment. *See* ERISA § 204(h) ("[a] plan ... may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless after adoption of the plan amendment *and not less than 15 days before the effective date of the plan amendment*, the plan administrator provides a written notice setting forth the plan amendment and its effective date") (emphasis added). Plaintiffs, however, urge that the federal discovery rule be used also to discern the date of accrual for Count IV, arguing that "[a] participant cannot have knowledge that he has not been given the notice required under [ERISA § 204(h)] without first learning of the

---

1996 Employee Definition Amendment as untimely. The action, filed on December 21, 2001, was brought within six years of the earliest date on which that portion of Count I might have accrued (i.e., January 1, 1996). *See Gluck*, 960 F.2d at 1182. We leave the characterization of the amendments challenged in Count I to the District Court in the first instance.

existence of the benefit reducing amendment itself." We agree with the plaintiffs. It would make no sense, and indeed do a remarkable disservice to the underlying purposes of ERISA and its disclosure requirements, to deem a notice claim to have accrued before a plaintiff knows or should have known that an amendment has the effect which triggers the notice requirement. Thus, it is appropriate to use the federal discovery rule to discern the date of accrual of the ERISA § 204(h) claim made here.

Again, as with the claim alleged in Count III, it may be that facts exist to demonstrate that plaintiffs knew or should have known that the Phase-Out Amendment had the effect which triggered the notice requirement at a time which would render the subsequent assertion of Count IV untimely. Here, however, the Complaint alleges that notice of the Phase-Out Amendment was not given, and further alleges no other facts from which to infer that plaintiffs otherwise knew or should have known the effect of the amendment on their benefits and, correspondingly, that they had not received the required notice. As with the claim in Count III, it would be premature to dismiss Count IV on limitations grounds at this point in the litigation.[10]

## V. THE FIDUCIARY DUTY CLAIM

The District Court appears to have dismissed the ERISA fiduciary duty claim alleged in Count II for the reason that it was duplicative of the claims pending in *Romero I* and the EEOC action.[11]

---

[10]Nothing in this opinion precludes the District Court on remand from considering the other grounds upon which Allstate moved to dismiss Count IV before reassessing the statute of limitations defense.

[11]Allstate did not seek dismissal of Count II as time-barred and has not defended such as the actual basis for the dismissal before this Court. Plaintiff-Appellants, however, do contend in the alternative that the District Court erred in dismissing Count II as time-barred. Like Allstate, we understand the dismissal to have been

23

We fail to see an overlap between the actions of a kind reasonably necessary to support a dismissal based on duplication. First, the Complaint in the present action names thirty-two plaintiffs, of which only twenty-nine are also plaintiffs in *Romero I.* Obviously, the three individuals involved in the present action but not in *Romero I* would not necessarily be entitled to relief should the plaintiffs in *Romero I* succeed. Second, the fiduciary duty claim alleged in this case is different from that alleged in *Romero I* which is not premised on ERISA. Thus, even if the plaintiffs in *Romero I* succeed on their fiduciary duty claim, it does not necessarily follow that Allstate breached a fiduciary duty under ERISA. Count II deserves to be considered in its own right and in the context of this case which sounds solely in ERISA.

---

premised on the overlay between the actions. We note, however, that if a time-bar was the basis for dismissal, that too would be reversible error. As it relates to representations made in the context of the November 1999 conversion effort, Count II was timely interposed because, even assuming under ERISA § 413(2) that plaintiffs knew of the breach in November 1999, the claim was timely filed within three years in December 2001. As it relates to representations made during the January 1996 effort, if the limitations period applicable to Count II was six years under ERISA § 413(1), then the period would not have expired until January 2002, again making the claim timely. If, however, the plaintiffs at some point had "actual knowledge" of the alleged breach of fiduciary duty, then ERISA § 413(2) would be triggered, making the limitations period three years, and possibly rendering a portion of Count II untimely. A plaintiff does not have "actual knowledge" unless he "actually knew not only of the events that occurred which constituted the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA." *Richard B. Rousch, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 586 (3d Cir. 2002) (internal citation omitted). Here, the Complaint contains nothing to indicate that the plaintiffs understood the representations at issue to have been unlawful when communicated. Hence, it would be premature to dismiss Count II on this basis at this time.

Allstate also asks that we affirm the dismissal of Count II on the alternative ground that it fails to state a claim. "[I]n order to make out a breach of fiduciary duty claim ..., a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Daniels v. Thomas & Betts Corp*., 263 F.3d 66, 73 (3d Cir. 2001). "[W]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." *In re Unisys Corp. Retiree Med. Ben. ERISA Litigation*, 57 F.3d 1255, 1264 (3d Cir. 1995). Allstate's theory in support of a merits-based dismissal is that it and its plan administrator cannot be understood to have made any *mis*representations to employee agents considering retirement during the 1996 and 1999 conversion efforts because the employee agents were told exactly what the Pension Plan then stated.

We decline as premature Allstate's invitation to affirm the dismissal of Count II on this ground. The Complaint puts at issue Allstate's knowledge at the time it made the challenged representations. *See* A. 62-63 (Compl. ¶¶ 109 ("The representation ... that former 'employee agents' ... who continued to provide compensated 'service' to Allstate under the R3001 contract would no longer be eligible to accumulate 'service' for purposes of eligibility for early retirement benefits and [enhanced early retirement] benefits under the Pension Plan was materially false and misleading. ..."); 110 ("At the time [the representations were made], Allstate and/or [the Plan Administrator] knew or should have known of the falsity of th[ose] representation[s]"); and 112 ("the [Plan Administrator] had a duty to correct the aforementioned misrepresentation , [and] ... failed to do so ...")). Even assuming the representations accurately described the terms of the written Pension Plan, if the representations were made for the purpose of intentionally misleading those considering conversion or retirement, then these representations may still give rise to a breach of fiduciary duty under ERISA.

25

Accordingly, dismissal of Count II at this early stage of the litigation is inappropriate.

## V.  CONCLUSION

For the foregoing reasons, that portion of the order of the District Court entered on March 31, 2004, which dismissed Civil Action No. 01-6764 in its entirety with prejudice will be reversed and the matter will be remanded for further proceedings consistent with this opinion.