In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3438

OMAR HAKIM,

*Plaintiff-Appellant*,

*v.*

ACCENTURE UNITED STATES PENSION PLAN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CV 03682—**Robert M. Dow, Jr.**, *Judge.*

ARGUED OCTOBER 25, 2012—DECIDED MAY 23, 2013

Before FLAUM, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* In this ERISA action, we deter-
mine whether a release of claims signed by a former
employee in exchange for a severance package is valid
and enforceable. Omar Hakim was an employee of
Accenture LLP (previously Andersen Consulting LLP)
for nearly ten years before being let go as part of a
workforce reduction in 2003. During part of his tenure
with the company, he participated in the company's

pension plan. In 1996, Accenture amended the plan to exclude a number of employees in various "service lines" (corporate talk for departments) throughout the company. By virtue of his position in the company, Hakim remained eligible to participate in the retirement plan when the amendment was adopted, but in 1999 he was promoted to a position in which he was no longer eligible to participate in the plan under the terms of the 1996 amendment.

Upon his termination in 2003 when he was 39 years old, Hakim signed a release in exchange for separation benefits that waived any and all claims that arose prior to signing the release. In 2008, while he was employed elsewhere, Hakim sought additional pension benefits from Accenture, arguing that the notice of the 1996 amendment to the plan (which was emailed to employees) was insufficient and therefore violated ERISA's notice requirements. After his claim was denied by Accenture, he sought relief in the district court. The district court granted summary judgment in favor of Accenture, holding that Hakim knew or should have known about his claim when he signed the release, and thus waived his claim. We agree with the district court and affirm.

## I. Background

Omar Hakim was employed by Accenture LLP from October 4, 1993, through May 16, 2003. He worked at the Las Colinas, Texas, office in information technology, and when he was hired at the age of 29, he was eligible to participate in the company's retirement plan (the

"Plan"). The Plan is a "defined benefits plan" within the meaning of ERISA, and Accenture is the Plan sponsor and Plan administrator. Under the Plan, Accenture, as Plan administrator, has the sole and exclusive discretion to determine which employees are eligible for the Plan and the amount of benefits they receive. The Plan also gave Accenture authorization to amend the Plan at any time.

When Hakim was hired in 1993, the Plan was structured such that all of Accenture's associate partners were eligible to participate in the Plan regardless of the service line they worked in, and all other employees were eligible to participate unless those employees worked in certain service lines, namely Strategic Services, Change Management Services, and Systems Integration. Hakim did not work in any of those three lines and thus was eligible to participate (and did participate) in the Plan. On June 13, 1996, Accenture decided to amend the Plan. The amendment, which would take effect on July 1, 1996 (the "1996 Amendment), altered Section 2.2(b) of the Plan to restrict participation in the Plan to certain categories of employees. The 1996 Amendment also provided that employees hired prior to the date of the Plan's amendment would remain eligible to participate in the Plan so long as the employee did not transfer service lines. Hakim would thus continue to accrue benefits unless and until he transferred or was promoted to a new, ineligible service line.

On June 6, 1996, Julianne Grace, Accenture's Human Resources ("HR") Policy Lead, emailed a memorandum

to the HR Leads at Accenture's local offices which explained the changes the 1996 Amendment would make to the Plan. Then, on June 13, Grace's executive assistant Jeanette Harris sent an email directing all HR Leads in Accenture's U.S. offices to:

> Please distribute the following memo and attachment to all personnel in your location. The memo notifies employees of the changes in retirement eligibility and is similar to the memo distributed earlier to all of HR. The attachment is a legally required document that must be delivered no later than Friday Afternoon, June 14, 1996.

The next day, Vickie Lee, who was the HR Lead for the Dallas metro area (including Las Colinas, where Hakim was based), directed Rene Edwards, another member of the Dallas HR department, to forward the memo to all personnel in the Dallas metro area. She did so at approximately 4:30 p.m. that day (June 14, 1996). The email distribution list indicates that it was sent to "Las.Colinas.Personnell.All.AC," among others. While Hakim was an employee in the Las Colinas office at this time, he disputes ever receiving the memo. At least two other employees in the Las Colinas office did receive this email.

The memorandum stated, in relevant part:

### Retirement Eligibility

Retirement benefit plans for personnel in Practice Management (PM), Business Process Management (BPM), and for associate partners and position-based

business unit personnel will remain unchanged. Effective July 1, 1996, personnel in Process, Change Management, Strategy, and Technology in the Consulting and Solution Center, Business Integration Providers, and Americas Information and Technology Support (AI&TS) organizations will not be eligible for retirement plan benefits. If, at any time, a retirement eligible employee transfers to a non-eligible group, as described above, s/he will remain a plan member but will become inactive. Only those years accrued as an active member qualify as benefit service for the employee. (Employees continue to accrue vesting service even as inactive members.)

The memorandum also explained that pension-eligible employees hired prior to July 1, 1996, would continue accruing credit unless and until they transferred to a non-eligible position. Hakim thus continued to accrue benefits under the Plan.

In 1997, 1999, and 2001, the company issued Summary Plan Descriptions to all personnel that summarized changes to the Plan, and those Summaries all noted, in relevant part, that employees who transfer or are promoted to ineligible service lines cease accruing additional benefits under the Plan. In 1999, the company created an online Benefits Information Database and emailed all personnel with instructions on how to view the Plan Descriptions online.

Also in 1999, Hakim was promoted to a new service line. Hakim sought and received the promotion beginning in the summer of 1999. Hakim testified that he

had contacted a supervisor around that time and began negotiating the terms of the promotion, and then began performing his new duties in September 1999. The promotion officially took effect, however, on December 16, 1999. Hakim's new position was Manager in the Communications and High-Tech Global Markets/Networks service line and he eventually rose to the position of Senior Manager in that line. As a Senior Manager, he was responsible for selling and delivering client solutions and was required to review and create client proposals, manage the delivery of work, and provide subject matter expertise to the company as a whole.

It is undisputed that Hakim's new service line was an ineligible line under the 1996 Amendment to the Plan, and therefore he ceased accruing additional benefits under the Plan in December 1999. In June 2000, Hakim received a packet via mail that laid out his full benefits package and compensation in comprehensive detail. In addition to describing his current salary and other benefits, the packet discussed Hakim's retirement situation. On the top of Page 3 of the packet, it read:

> **The Retirement Plan**
>
> Because of your current employment classification, you are ineligible to participate in the Retirement Plan. However, you have earned a monthly benefit based on your prior period(s) as an eligible employee. Contact the Andersen Consulting Benefits Information Center and select the Retirement Plan option if you would like more information.

The packet provided a calculation of Hakim's projected monthly income in retirement if he were to remain with

the company until he reached the age of 62, and also described his total annual compensation (which, as of June 2000, was $177,961). Hakim does not dispute that he received this benefits statement.

In May 2003, Hakim was terminated by Accenture due to a workforce reduction. All employees affected by the reduction, including Hakim, were offered a Separation Benefits package in exchange for signing a Release Agreement ("Release"). Hakim opted to accept the Separation Benefits and signed the Release on May 15, 2003. The Release stated, in relevant part:

> As a material inducement to Accenture to enter into this Agreement and as part of the consideration for the Separation Benefits offered to you, to which you agree you are not otherwise entitled, you hereby forever release, waive, and discharge Accenture LLP . . . from any and all claims of any nature whatsoever, known or unknown which you now have, or at any time may have had, against the Released Parties up to and including the date you sign this Agreement ("Claims"). This General Release of Claims includes, without limitation, any Claims related to your employment, your activities on behalf of Accenture and its predecessors, parent, subsidiaries, divisions and affiliates, the termination and layoff of your employment, Claims of wrongful discharge, Claims for the payment of any salary, wages, bonuses and commissions, Claims of discrimination under the common law or any federal or state statute . . ., and all other statutory, common

> law or other Claims of any nature whatsoever. This General Release of Claims does not apply to any Claims concerning breach of this Agreement or any Claims arising after you sign this Agreement.
>
> . . .
>
> You are advised to review this Agreement with an attorney of your choice before signing this Agreement. In any event, you should thoroughly review and understand the effect of this agreement and its General Release of Claims before taking action upon them.
>
> . . .
>
> By signing this Agreement, you have and acknowledge that you have carefully read and fully understand all of its provisions and that you are voluntarily entering into this Agreement. By signing this Agreement you agree and acknowledge that you have not relied upon any promise, inducement, representation or statement, whether oral or in writing, made by Accenture or Accenture's agents, representatives or attorneys with regard to this subject matter, basis, or effect of this Agreement, except as expressly set forth in this Agreement.

Hakim testified that he understood the terms of the Release and signed it knowingly and voluntarily, but did not consult with an attorney prior to signing it. In July 2003, Hakim received a final statement of benefits from Accenture which again showed that he had stopped accruing pension benefits under the Plan in December 1999.

On July 27, 2007, after meeting with his financial advisor, Hakim brought an administrative claim for additional pension benefits, and Accenture's Benefit Claims Committee denied the claim in November 2007. Hakim appealed the Committee's decision, but Accenture denied his appeal in April 2008. Hakim then sought relief in the district court. His claim for additional benefits centered on his contention that Accenture violated certain provisions of ERISA. His first, second, and fourth counts sought additional benefits based on a lack of notice of the 1996 Amendment to the Plan in violation of ERISA's notice provision, Section 204(h), 29 U.S.C. § 1054(h) (1996), which requires that the plan administrator provide adequate notice of any amendments to a plan that result in a "significant reduction in the rate of future benefit accrual." His third count sought additional benefits based on a failure of the Plan's Summary Plan Descriptions to provide an understandable description of eligibility for participation in the Plan. His fifth count alleged that certain of the Plan Descriptions failed to set forth Hakim's ERISA rights and claim procedures. Accenture moved to dismiss the complaint, and the district court granted the motion with respect to Counts I-III, and also dismissed part of Count V. Those Counts are not at issue on appeal.

Hakim and Accenture both moved for summary judgment for the remaining claims on Counts IV and V. On August 16, 2010, the district court granted summary judgment in favor of Accenture on Count V and dismissed most of the defendants to Count IV, leaving only the Plan itself as a defendant. The district court then

denied both parties' summary judgment motions pertaining to Count IV against the Plan. With regard to the defendant's motion for summary judgment, the district court held that Hakim's claim was for a "pension entitlement" and that the Release he signed did not bar his suit per ERISA's anti-alienation provision. With regard to Hakim's motion, the district court ruled that the email notice of the 1996 Amendment was not a *per se* unlawful method of delivering notice of changes to the Plan in 1996 and that there existed a question of fact about whether the email satisfied the requirements of Section 204(h).

Before the case could proceed to trial, we decided *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011), in which we held that a Release similar to Hakim's barred the plaintiff's ERISA claim for additional pension benefits. Accenture moved for reconsideration, and on September 29, 2011, the district court granted Accenture's motion and dismissed Hakim's only remaining claim. The district court ruled that, based on *Howell*, ERISA's anti-alienation provision did not apply and Hakim's claim was barred by the Release he signed. The district court's conclusion centered on the fact that Hakim had constructive notice of his claim at the time he signed his release. Hakim now appeals. We agree with the district court that Hakim had, at the very least, constructive notice of his claim and that the Release he signed bars his claim, and we affirm.

## II. Discussion

We review an appeal from a district court's grant of summary judgment de novo. *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). We construe all facts and draw all reasonable inferences in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

The central issue on appeal is whether the Release Hakim signed when he parted ways with Accenture in 2003 bars his present claim. The Release purported to cover "any and all claims of any nature whatsoever, known or unknown, which you now have, or at any

time may have had" against Accenture and its subsidiaries. Accenture argues that the Release completely bars Hakim's claim; Hakim contends that the Release does not bar his claim for two reasons: (1) ERISA's anti-alienation provision prohibits the release of ERISA claims through a general release, and (2) his claim for additional pension benefits under the Plan did not accrue until Accenture denied his administrative claim for those benefits in April 2008, and thus arose after the time period covered by the Release.

We begin with Hakim's first argument. ERISA's anti-alienation provision states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). We have held, however, that pension *entitlements* are subject to the anti-alienation provision and cannot be alienated, but contested pension *claims* fall outside the realm of the provision and can be alienated. *See Lynn v. CSX Transp.*, 84 F.3d 970, 975 (7th Cir. 1996). The distinction is crucial because if the benefit Hakim is seeking is a pension entitlement, the anti-alienation provision effectively nullifies the Release he signed, at least with regard to the entitlement. If, however, Hakim's suit is not for an entitlement, but rather a claim for additional benefits to which he is not entitled under the terms of the Plan itself, the anti-alienation provision does not apply, and the question becomes whether the Release bars this claim.

Pension entitlements are, without exception, subject to the anti-alienation provision of ERISA. *See Patterson*

*v. Shumate*, 504 U.S. 753, 760 (1992). A pension entitlement arises under the terms of the pension plan itself. *Lynn*, 84 F.3d at 975. In other words, an entitlement, as its name would suggest, refers to vested benefits to which a plaintiff is entitled under the terms of the pension plan itself. In *Lynn*, the plaintiff sought "to protect military service benefits to which he believe[d] he [was] entitled to under the terms of the plan." *Id.* at 977. We held that the plaintiff was "asking the court to interpret the pension plan itself" and thus the plaintiff's suit involved a pension entitlement, which subjected it to the anti-alienation provision. *Id.*

Contested pension claims, however, are "simply outside the realm of the [anti-alienation] provision." *Id*. at 975. We have previously explained that a contested claim is one that "the claimant had actual or constructive knowledge of . . . at the time of the signing of the release," such "that it could have been contested and resolved at the time the release was entered into (but was not)." *Id.* A contested claim does not seek benefits to which the plaintiff believes he is entitled under the terms of the pension plan itself, but rather for additional benefits above and beyond the benefits to which he was entitled under the terms of the plan. For example, a plaintiff might, like Hakim, claim that he deserves more benefits than he accrued under the terms of the plan on the grounds that the plan administrator failed to provide adequate notice of a reduction in benefits or that the plan administrator somehow violated his fiduciary duty. Such claims could be resolved before a plaintiff signs a release of those claims, and this is

critical because general releases of claims are valid as long as the signing party has actual knowledge of the claims (or could have discovered those claims with a reasonable inquiry) he or she is giving up. *Fair v. Int'l Flavors & Fragrances*, 905 F.2d 1114, 1116 (7th Cir. 1990).

Hakim's suit is a contested pension claim, not an entitlement suit. Hakim contests how his benefits (namely, the amount of money he will receive each month from his pension) were calculated. His suit centers on his argument that, because the Accenture failed to provide adequate notice of the 1996 Amendment to the Plan, he did not receive information indicating that he and his employer calculated his defined benefits differently until long after he signed the Release. In other words, he claims he did not know that Accenture had calculated his benefits differently than he originally expected. He says he never received notice that his promotion placed him in a position where he was no longer eligible to participate in the Plan until he discovered the deficiency five years after he signed the Release, and is therefore entitled to additional benefits. Unlike the plaintiff in *Lynn*, he is not asking us to interpret the Plan itself—indeed, the Plan is quite clear: Hakim accrued pension benefits under the Plan until he was promoted to a position in which he was no longer eligible to participate in the Plan. He continues to be eligible to receive those vested benefits that accrued prior to his promotion in December 1999. As we have previously held:

> The basic point is that the release released the defendants from liability based on contestable pension

claims. . . . [T]he release did not wipe out [the plaintiff's] claims to any pension benefits to which the plan entitled him. If the release were thought broad enough to wipe out actual pension entitlements, its enforceability would be questionable in light of ERISA's provision forbidding the alienation of pension benefits. For then it might be a case of [the plaintiff] having "sold" his pension rights, in exchange for [his severance package] and any other consideration in the omnibus agreement.

*Licciardi v. Kropp Forge Div. Emps' Ret. Plan*, 990 F.2d 979, 982 (7th Cir. 1993). Thus, as the district court correctly held, "a release cannot bar a plaintiff's recovery of his pension as it stood when he signed a release, but it can bar claims that a plaintiff is entitled to additional benefits based on purported ERISA violations, provided that the plaintiff had actual or constructive notice of the claims at the time that he executed the release." *Hakim v. Accenture U.S. Pension Plan*, 818 F. Supp. 2d. 1075, 1080 (N.D. Ill. 2011).

Hakim did not "sell" or barter away his pension benefits in exchange for his severance package because he will still receive those entitled benefits he accrued while working in an eligible service line at Accenture. He is not suing to recover money that was in the retirement account at the time he left his employer, which the plaintiff in *Lynn* was doing. Instead, he wants the court to rule that his retirement account would have been worth more had Accenture not violated ERISA's notice provision by providing inadequate notice of the

1996 Amendment. This is similar to the relief the plaintiff was seeking in *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011). In *Howell*, we considered whether a general release signed by one of the plaintiffs effectively waived his claim for breach of fiduciary duty under ERISA Section 502(a)(2), and held that it did. *Id.* at 558-560. We determined that the plaintiff had a right to his benefits and they could not be confiscated, but he waived any right to bring a lawsuit claiming that his account would have been worth more had the defendants not breached a fiduciary duty. *Id.* Thus, as in *Howell*, Hakim's claim is a contested pension claim, and ERISA's anti-alienation provision does not apply to it.

Now we must determine whether Hakim had actual or constructive notice of the claim he now makes at the time he signed the Release in 2003. The Release only bars claims that existed prior to the date Hakim signed it, and Hakim contends that his claim for benefits did not accrue until Accenture denied his administrative claim in April 2008. However, for purposes of Section 204(h) claims, courts have held that a claim accrues when a plaintiff became aware or should have become aware of a change in a plan that affected his right to continue to participate in the plan. *See Romero v. Allstate Corp.*, 404 F.3d 212, 225 (3d Cir. 2005) (holding that claims arising under Section 204(h) accrue when a plaintiff "knew or should have known that the amendment has brought about a clear repudiation of certain rights that [the plaintiff] believe[s] [he] had under the plan.").

Even if the email distributed on June 14, 1996, was insufficient to apprise Hakim of the amendment to the Plan (and we need not consider that question here), the absolute latest he can reasonably claim to be unaware of his changed status is when he received his Statement of Individual Benefits in 2000. That document clearly informed him that his promotion terminated his participation in the Plan. Page 3 of the document states: "Because of your current employment classification, you are ineligible to participate in the Retirement Plan." This language is not highly technical, nor is it buried deep in a document. It occurs on the third page of a document that described Hakim's compensation package, and it lays out in plain language that Hakim was no longer eligible to participate in the Plan due to his new position. It is difficult to imagine a more effective means of providing notice that an employee is no longer eligible to participate in Accenture's retirement plan. While Hakim continues to claim he had no knowledge that his promotion left him ineligible to continue participating in the Plan, the benefits statement makes it clear that, at the very least, he should have known about his claim well before he signed the Release in 2003. This more than satisfies *Romero*'s constructive notice requirement. *See id.* at 225.

Having decided that Hakim had, at the least, constructive notice of his claim, the last question we must consider is whether Hakim's Release of claims against Accenture was valid.

> For a release to be valid, the party must sign it know-ingly and voluntarily. A court must examine the

totality of the circumstances surrounding the signature, including such matters as: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Howell*, 633 F.3d at 559 (citing *Pierce v. Atchison, Topeka, & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995)).

Hakim admitted that he read the Release in full and signed it knowingly and voluntarily. Given Hakim's education level and considerable professional achievements, we cannot say that he lacked the sophistication to understand what he was reading and giving up in exchange for his severance package. The Release was not overly technical, nor was it excessively lengthy—it clocked in at seven pages and clearly laid out what Hakim was giving up. While he did not consult with an attorney, the Release advised him to do so and he chose not to. And while he did not negotiate the terms of the Release, there is no evidence that a rational person could not have deemed the amount of that

payment adequate compensation for the rights he was giving up. Like the plaintiff in *Howell*, Hakim fails to put forth sufficient evidence "to create a genuine issue of fact on the questions of knowledge and voluntariness," and summary judgment in favor of Accenture was appropriate. *Id.*

### III.  Conclusion

For the reasons set forth above, the Release Hakim signed in exchange for separation benefits is valid and bars him from raising his Section 204(h) claim. The district court's order granting summary judgment in favor of Accenture is AFFIRMED.