

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2007

# Miller v. Fortis Benefits Ins

Precedential or Non-Precedential: Precedential

Docket No. 05-2539

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Miller v. Fortis Benefits Ins" (2007). *2007 Decisions.* Paper 1699.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1699

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2539

_____

PAUL MILLER

Appellant

v.

FORTIS BENEFITS INSURANCE COMPANY and RESORTS
INTERNATIONAL HOTEL

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cv-04428)
District Judge: Honorable Stanley S. Brotman

_____

Argued September 14, 2006

Before: FUENTES, FISHER, and McKAY,* Circuit Judges.

(Filed: January 29, 2007)

_____

* The Honorable Monroe G. McKay, Senior Judge,
United States Court of Appeals for the Tenth Circuit, sitting by
designation.

Robert P. Merenich (Argued)
Gemmel, Todd & Merenich
767 Shore Road
P.O. Box 296
Linwood, NJ 08221

      Counsel for Appellants

Randi F. Knepper
Joshua A. Zielenski (Argued)
McElroy, Deutsch, Mulvaney & Carpenter
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

      Counsel for Appellees

_____

OPINION OF THE COURT
_____

Fuentes, Circuit Judge.

Appellant Paul Miller appeals the District Court's dismissal of his complaint under Federal Rule of Civil Procedure 12(b)(6). The focus of Miller's appeal is the accrual date of his cause of action to recover benefits under the Employee Retirement Income Security Act ("ERISA"). We must determine whether his cause of action accrued in 1987, when he first began receiving a miscalculated benefit award, or in 2003, when his request to correct that award was first denied. For the reasons that follow, we conclude that his cause of action accrued in 1987, when he first received the erroneously calculated award. Because Miller did not file his claim within the applicable statutory period, we will affirm the order of the District Court.

## I. Background

Paul Miller became disabled on October 6, 1986 after undergoing heart surgery. About fourteen months before the

surgery, Miller was employed by Resorts International Hotel ("Resorts") as a casino floor worker making $690 per week. However, immediately before becoming disabled, he worked as an outside marketing salesman earning $768 per week. In April 1987, he filed a claim for employee disability benefits under a long term disability policy ("the LTD plan") issued by Mutual Benefit Life Insurance Company ("Mutual Benefit"). Under the LTD plan, Miller was entitled to ongoing disability payments of sixty percent of his current salary until he reached the age of sixty-five. According to Miller's complaint, when Resorts reported his salary to Mutual Benefit, it mistakenly stated that he still held his old position as a casino floor worker earning $690. In April 1987, Miller began receiving disability payments erroneously based on this former salary.

It was not until 2002, about fifteen years after he began receiving benefits, that Miller realized the calculation was incorrect. On November 12, 2002, after consulting with an accountant, he sent a letter to Fortis Benefits Insurance Company ("Fortis"), which had acquired Mutual Benefit, seeking an upward adjustment to reflect his 1987 salary. Fortis agreed to investigate the matter, but subsequently informed Miller by letter that the relevant pay records were no longer available. According to Fortis, since Resorts kept pay information for only seven years, it no longer had the information needed to determine the merits of Miller's claim.

In August 2003, Miller filed a complaint in New Jersey Superior Court which was removed to the District of New Jersey. In his amended complaint, Miller alleged, under 29 U.S.C. § 1132(a)(1)(B), that Fortis and Resorts unlawfully denied him disability benefits, and, under 29 U.S.C. § 1132(a)(3), that they breached a fiduciary duty to him by misrepresenting his proper salary and failing to investigate thoroughly his claim for adjustment. Resorts and Fortis moved to dismiss Miller's complaint for failure to state a claim upon which relief could be granted. Specifically, they contended that Miller's claims were barred by a six-year statute of limitations which began to run in 1987.

Miller conceded that the six-year limitations period applied,

but disagreed with Fortis about the appropriate date of accrual.[1] The District Court ruled that the six-year statute of limitations began to run in July 1987, based on the following language in the LTD plan:

> Proof of Loss
>
> Written proof of loss must be given to Us at Our Home Office or one of Our Regional Group Claim Offices. For any loss for which the Policy provides periodic payment, the written proof of loss must be given within 90 days after the end of the first month or lesser period for which We may be liable. After that, proof must be given at such intervals as We may reasonably require. For any other loss, the written proof of loss must be given within 90 days after the date of loss.
>
> . . .
>
> Legal Actions
>
> No action at law or in equity may be brought to recover on the Policy any earlier than 60 days after the required proof of loss has been given. No action may be brought after the expiration of the statute of limitations in the state having jurisdiction. In no event may action be brought any later than 6 years after the time required for submitting the proof has elapsed.

---

[1] Although the parties agreed that a six-year statute of limitations applied to Miller's claim, they disagreed on the source of that limitations period. Fortis appears to have cited the six-year limitations period contained in the LTD plan, whereas Miller referenced the six-year period for contract actions in New Jersey set forth in N.J.S.A. § 2A:14-1. Since there is no dispute about the length of the limitations period, we need not determine the source from which it derives.

(Appendix at 57-58.) Relying on the LTD plan, the District Court reasoned:

> The "Proof of Loss" section refers to the end of the "first month . . . for which we may be liable." The policy establishes that the insured must be totally disabled for six months before benefits are payable. Since Miller was disabled on October 6, 1986, Fortis would first become liable in March or April 1987. The policy also provides that the proof of loss must be sent in writing to Fortis within 90 days of the period that Fortis first became liable. Thus, if Fortis first became liable in March or April of 1987 then the time that Miller needed to provide written proof of loss expired in June or July of 1987. Consequently, the plan dictates that Miller had six years from this time, in June or July of 1987, to file a claim.

Miller v. Fortis Benefits Ins. Co., 363 F. Supp. 2d 700, 704-05 (D.N.J. 2005). Since Miller filed his complaint more than six years after 1987, the District Court dismissed the case. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1441(a), because of "original jurisdiction" under § 502(e) of ERISA. 29 U.S.C. § 1132(e). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of a motion to dismiss. Brown v. Card Servs. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). When considering an appeal from a Rule 12(b)(6) dismissal, our review is limited to "the contents of the complaint and any attached exhibits." Yarris v. County of Delaware, 465 F.3d 129, 134 (3d Cir. 2006). We accept as true all well-pled allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002).

## III. Discussion

A.      Construing Miller's Claim

ERISA provides plan beneficiaries with both fiduciary and non-fiduciary causes of action. Miller's complaint does not make clear whether he is pursuing both types of claim. In Count I, he seeks an adjustment of benefits under 29 U.S.C. § 1132(a)(1)(B), which provides a non-fiduciary cause of action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In Count II, Miller seeks equitable relief under 29 U.S.C. § 1132(a)(3), which provides a general cause of action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Also under Count II, Miller asserts that Resorts "intentionally misrepresented" his salary to Mutual Benefit in 1986 and failed to investigate fully his 2002 claim that he had been underpaid. Yet, nowhere in his complaint does Miller mention what substantive provision of ERISA his § 1132(a)(3) claim relies on, nor does he state the elements of a fiduciary cause of action. See Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. and Research, 334 F.3d 365, 387 (3d Cir. 2003) (reciting the elements of an ERISA fiduciary duty claim).

Read as a whole, Count II suggests an attempt to make out a fiduciary claim under 29 U.S.C. § 1104(a), which imposes a standard of care on plan fiduciaries. See Meagher v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan, 856 F.2d 1418, 1423 (9th Cir. 1988) (evaluating underpayment of benefits as violation of 29 U.S.C. § 1104(a)); George L. Flint, ERISA: Fumbling the Limitations Period, 84 Neb. L. Rev. 313, 354-55 (2005) (arguing that federal courts should construe all claims for benefits due as fiduciary claims). Even so, we need not address whether Miller has properly asserted a fiduciary claim under ERISA because, on appeal, Miller only pursues a non-fiduciary claim for benefits under § 1132(a)(1)(B). His brief mentions neither ERISA's fiduciary provisions nor § 1132(a)(3). Furthermore, Miller cites only case law pertaining to non-fiduciary claims, even though fiduciary claims are governed by separate precedent. Accordingly, we consider any fiduciary or § 1132(a)(3)

claims to be waived on appeal and therefore limit our discussion to his non-fiduciary claim for benefits under § 1132(a)(1)(B).

## B.      Accrual Date of a Non-Fiduciary ERISA Claim

The parties agree that a six-year statute of limitations applies, but dispute the relevant date of accrual.[2]  Fortis contends that the District Court was correct in utilizing the terms of the LTD plan in determining the accrual date.  Fortis relies principally on Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 873-75 (7th Cir. 1997), in which the Seventh Circuit held that an agreed-upon limitations period, embodied in an ERISA plan, will control if the court considers it to be reasonable.  Fortis's reliance on Doe, however, is misplaced.  In Doe, the court determined the applicable statute of limitations for a non-fiduciary ERISA claim—here, we must determine the proper accrual date.

As we have explained previously, the accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period.  See Romero, 404 F.3d at 221.  To determine the accrual date of a federal claim, we utilize the federal "discovery rule" when there is no controlling federal statute.  Id. at 222.  Under this rule, a statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim.  Id.

In the ERISA context, the discovery rule has been "developed" into the more specific "clear repudiation" rule

----

[2] ERISA contains a statute of limitations for claims alleging a breach of fiduciary duty, but no limitations period for non-fiduciary claims.  Syed v. Hercules Inc., 214 F.3d 155, 158-59 (3d Cir. 2000).  Moreover, ERISA, enacted in 1974, is not subject to 28 U.S.C. § 1658, which prescribes a default, four-year limitations period for claims arising under acts of Congress enacted after December 1, 1990.  Id. at 158.  For non-fiduciary claims, the applicable statute of limitations is that of "the forum state claim most analogous to the ERISA claim at hand."  Romero v. Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005) (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1180 (3d Cir. 1992)).

whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied. Id. Notably, a formal denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known the beneficiary. Id. at 222-23; see also Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48 (2d Cir. 1999) ("We . . . follow the Seventh, Eighth, and Ninth Circuits in holding that an ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits."). In other words, some "event other than a denial of a claim" may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated. Cotter v. E. Conference of Teamsters Ret. Plan, 898 F.2d 424, 429 (4th Cir. 1990).

Relying on Romero, Miller asserts that the clear repudiation rule requires a formal denial of benefits to trigger the statute of limitations. He contends that, since his application for upward adjustment was not formally denied until March 2003, his cause of action did not accrue until that time. This argument misconstrues Romero, since the clear repudiation rule does not require a formal denial to trigger the statute of limitations. To the contrary, the rule includes other forms of repudiation when a beneficiary knows or should know he has a cause of action. As Romero clearly states, the clear repudiation rule "avoids a myriad of ills that would accompany any rule that required the denial of a formal application for benefits before a claim accrues." Romero, 404 F.3d at 223 (emphasis added). We therefore reject Miller's proposed application of the clear repudiation rule.

Still, we consider the clear repudiation concept to be useful in this case, as it represents a refinement of the federal discovery rule in the context of ERISA claims for benefits. Even though we know of no case applying the concept directly to a benefit award, we believe that the principles articulated in clear repudiation cases, which reflect the federal discovery rule, are applicable here.[3] With

---

[3] We recognize that it slightly strains the word "repudiation" to use it in the context of a benefit award, but we believe it

this in mind, we now consider whether, before Miller's claims were formally denied, his rights under the LTD plan were "clearly repudiated."

## C. Application of the Clear Repudiation Rule

Applying the clear repudiation concept here, we observe that an erroneously calculated award of benefits under an ERISA plan can serve as "an event other than a denial" that triggers the statute of limitations, as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary. Cf. Romero, 404 F.3d at 220-26 (applying the clear repudiation rule to plan amendment resulting in a reduction in benefits). Regarding the first requirement, an underpayment can qualify as a repudiation because a plan's determination that a beneficiary receive less than his full entitlement is effectively a partial denial of benefits. Like a denial, an underpayment is adverse to the beneficiary and therefore repudiates his rights under a plan. Cf. 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse benefit determination" to include "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit") (emphasis added). Regarding the second requirement, repudiation by underpayment should ordinarily be made known to the beneficiary when he first receives his miscalculated benefit award. See Gluck, 960 F.2d at 1180-81 ("[A]n employee's receipt of diminished payment gives immediate, obvious notice to an employee that something is amiss . . . ."). At that point, the beneficiary should be aware that he has been underpaid and that his right to a greater award has been repudiated. See Cotter, 898 F.2d at 429 (suggesting that benefit award can constitute a repudiation of further benefits for purposes of accrual). The beneficiary should exercise reasonable diligence to ensure the accuracy of his award.

Based on this view of the clear repudiation rule, we hold that Miller's cause of action to adjust benefits accrued upon his initial receipt of the erroneously calculated award. The award he began receiving in 1987 constituted a repudiation of his right to

---

appropriate in order to preserve consistency with cases addressing non-fiduciary claims for benefits.

greater payment under the LTD plan. This repudiation should have been clear to him upon initial receipt of payment in 1987—monthly checks based on a simple calculation of sixty percent of his salary should have alerted him that he was being underpaid. Miller provides no basis for us to infer that the repudiation was unclear to him at that time.[4]

Our holding reflects the underlying goals of statutes of limitations. As we noted in <u>Romero</u>, statutes of limitations are intended to encourage "rapid resolution of disputes, repose for defendants, and avoidance of litigation involving lost or distorted evidence." <u>Romero,</u> 404 F.3d at 223. These aims are served when the accrual date anchors the limitations period to a plaintiff's reasonable discovery of actionable harm. This ensures that evidence is preserved and claims are efficiently adjudicated. In contrast, a statute of limitations not based on reasonable discovery is effectively no limitation at all. Such would be the case if we held that Miller's cause of action accrued only upon Fortis's formal denial of his adjustment claim. Under this rule, a plaintiff could receive benefit checks for decades before deciding to investigate the accuracy of his award—a plaintiff could thereby trigger the statute of limitations at his own discretion, creating an indefinite limitations period. We decline to invite such a result.

Relatedly, we decline to adopt a "continuing violation theory" whereby a new cause of action would accrue upon each underpayment of benefits owed under the plan. <u>See</u> <u>Meagher</u>, 856 F.2d at 1422-23 (holding that "issuance of each check" commenced a new statute of limitations period). Cognizant of the purpose of statutes of limitations, we have rejected this type of approach in other ERISA cases. <u>See</u> <u>Vernau v. Vic's Mkt., Inc.</u>, 896 F.2d 43, 47 n.7 (3d Cir. 1990) (concluding that plaintiffs were on "inquiry notice" of breach upon initial notice of calculation error); <u>Gluck</u>, 960 F.2d at 1181 (rejecting accrual rule that would "open the door to a 48-year limitations period"); <u>Henglein v. Colt Indus. Operating</u>

---

[4] Significantly, at oral argument, Miller's attorney could point to no facts that he would pursue in discovery upon remand to help establish that Miller had reason to be unaware in 1987 that there was an error.

Corp., 260 F.3d 201, 213-14 (3d Cir. 2001) (relying on <u>Vernau</u> and <u>Gluck</u> to reject continuing violation approach because it would give rise to indefinite limitations period).

Our application of the clear repudiation rule is consistent with the broad, beneficiary-protective goals of ERISA. We noted in <u>Romero</u> that ERISA does not require "plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential plan errors and abuses." <u>Romero</u>, 404 F.3d at 224 (internal quotation marks omitted). But this concern is not implicated here. Miller does not complain about the notice provided to him of his rights or entitlements under the LTD plan. Instead, it is apparent that Miller simply failed to investigate his benefit determination for fifteen years. Requiring him to do so within six years of an erroneous payment does not impose on him a burdensome oversight role. Instead, the need for Miller to be vigilant was triggered only when his receipt of benefits alerted him that his award had been miscalculated. Such vigilance does not make Miller a "watchdog" for potential plan errors and abuses.[5]

Finally, we recognize that our application of the clear repudiation rule diverges from that of other courts confronting the same issue. For example, in <u>Miele v. Pension Plan of New York State Teamsters Conference Pension Plan & Ret. Fund</u>, 72 F. Supp. 2d 88 (E.D.N.Y 1999), the court required that a plan formally deny plaintiff's adjustment application before the statute of limitations would begin to run. In <u>Miele</u>, like here, plaintiff alleged that plan administrators erroneously calculated his benefits under an ERISA plan. During litigation, the defendant argued that "a miscalculation claim accrues on the date that a plaintiff is clearly and unequivocally informed of the amount of his benefit." <u>Id.</u> at 99.

---

[5] We note that Miller's conclusory assertion that an intentional misrepresentation gave rise to the miscalculation does not provide a basis for finding his claim timely. In the context of his non-fiduciary claim for benefits, Miller's vague allegation of misrepresentation—based on a single mistaken communication between Resorts and Mutual Benefit, and without any suggestion of ongoing concealment—does not alter our analysis.

Although recognizing the "logic and appeal" of such a rule, the district court rejected it. It explained that a miscalculation involved an award rather than a denial of benefits, making it less likely that a plaintiff would be "on notice of a possible claim." Id. Therefore, it held that a miscalculation claim would accrue only when a plaintiff "inquire[s] about the amount of . . . benefits and [is] told . . . that those benefits [were] correctly computed." Id. (quoting Kiefer v. Ceridian Corp., 976 F. Supp. 829, 843 (D. Minn. 1997) (alterations in original); see also Novella v. Westchester County, 443 F. Supp. 2d 540, 545 (S.D.N.Y. 2006) (applying rule that claim does not accrue until beneficiary "inquires about the calculation of his benefits and the Plan rejects his claim that the benefits were miscalculated").

We are not persuaded by this approach. We do not believe that the accrual date in this case should derive from a bare assumption that benefit recipients are ill-equipped to safeguard their rights. Indeed, we require beneficiaries to safeguard those rights upon a denial of benefits, and this case provides no compelling reason to require less diligence after an award. Of course, it is possible that a denial of benefits is more likely to incite a beneficiary to action than an award; however, that possibility alone cannot justify years of inaction. Moreover, we do not believe that for there to be a clear repudiation, a plan must "confirm" a benefit award to the beneficiary. Without any indication of deficient notice, a beneficiary's receipt of an award is sufficient to inform him that the plan has determined his entitlement. Further assurances should not ordinarily be necessary to make clear that a plan believes its benefit determination is accurate.

## IV. Conclusion

In sum, when Miller began receiving benefits in April 1987 based on a salary of $690 per week, his right to receive benefit payments based on a salary of $768 per week was clearly repudiated. Therefore, his cause of action for adjustment of benefits accrued in April 1987. Miller had until April 1993 to file his complaint for adjustment of benefits. Since he did not do so until 2003, his claim is time barred. Accordingly, we will affirm.