**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:  2013-NMCA-068

Filing Date:  April 30, 2013

Docket No. 31,475

HILLREY BEGGS, MELVINA LANCASTER
CROCKETT, JOSE M. GUTIERREZ,
ARLY V. HAMNER, MIGUEL S. LUCERO,
CURTIS WAGNER, GARY WATKINS, and
JIM WOOD,

       Plaintiffs-Appellants,

v.

THE CITY OF PORTALES, a municipal
corporation,

       Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY
Drew D. Tatum, District Judge

Eric D. Dixon
Portales, NM

for Appellants

Hinkle, Hensley, Shanor & Martin L.L.P.
Richard E. Olson
Rebecca Nichols Johnson
Roswell, NM

for Appellee

## OPINION

**FRY, Judge.**

**{1}**    The opinion originally filed in this case on April 2, 2013, is withdrawn, and this Opinion is filed in its place.  Defendant's motion for rehearing is denied.

1

**{2}** Plaintiffs, retired employees of the City of Portales (the City), brought suit against the City seeking to recover damages for reduced, and eventually terminated, health insurance reimbursement payments. Plaintiffs appeal the district court's order granting summary judgment on the basis that Plaintiffs' claims were barred by the applicable statute of limitations. The district court concluded that Plaintiffs' claims began to accrue in 2001 when the City stopped offering Plaintiffs health insurance coverage under the City's group plan and stopped reimbursing Plaintiffs for seventy-five percent of their health insurance premiums. Plaintiffs argue on appeal that the statute of limitations did not begin to accrue until the City completely terminated their health insurance reimbursement payments in 2005. Alternatively, Plaintiffs argue that the City should be estopped from asserting the statute of limitations as a defense due to its representations upon which Plaintiffs relied. We affirm the district court's ruling insofar as it relates to the City's alleged agreements (1) to keep Plaintiffs on the City's own health insurance plan, and (2) to reimburse Plaintiffs seventy-five percent of their health insurance premiums. We reverse to the extent that Plaintiffs claim entitlement to reimbursement amounts lower than seventy-five percent, which claim would not have begun to accrue until the City completely terminated the reimbursement payments in 2005.

**BACKGROUND**

**{3}** This is the second appeal in this case. In *Beggs v. City of Portales*, 2009-NMSC-023, ¶ 22, 146 N.M. 372, 210 P.3d 798, our Supreme Court held that the district court improperly granted summary judgment to the City because there were genuine issues of material fact as to whether contractual rights existed between the City and Plaintiffs that would entitle Plaintiffs to receive reimbursement payments from the City for their health insurance premiums. Following the Supreme Court's decision, this case was remanded to the district court, had a brief interlude in federal court, and was eventually re-filed in state district court. The City then filed a motion for partial summary judgment against the eight Plaintiffs who retired before 2002, arguing that the three-year statute of limitations under NMSA 1978, Section 37-1-24 (2011), barred their claims. The district court agreed and granted the City's motion for summary judgment. Plaintiffs referenced in this Opinion are the eight pre-2002 retirees whose claims were dismissed by the district court. The following are the facts relevant to the present appeal.

**{4}** In October 1994, the City adopted a new personnel policy manual for the City's employees. The portion of the manual covering retiree health care insurance, Section 629, stated:

> The City of Portales shall offer employees upon their retirement the option of continuing their group health and life insurance coverage through the City's group plan, provided they are enrolled in the group health plan at least one year prior to retirement. The cost of the insurance for the retiree shall be the same as the cost for regular employees. If the City is paying [seventy-five percent] of the premium for employees, the City shall pay

2

[seventy-five percent] of the premium for the retiree and shall be budgeted out of the department from which the employee retires. Retirees shall be responsible for paying their portion of the premium on a monthly, timely basis, in order to avoid the lapse of their policy coverage.

Conditions of the policy coverage shall apply in accordance with the retiree's age and circumstances on an individual basis.

**{5}** Section 629 was retained in its entirety when the 1994 personnel policy was revised in 1997. Three Plaintiffs retired while the 1994 policy was still in effect. The remaining five retired after the 1997 revision. Seven of the eight Plaintiffs chose, pursuant to Section 629, to continue coverage under the City's group plan following retirement, and the City initially paid seventy-five percent of their health insurance premiums while Plaintiffs were covered under the City's group plan. The remaining retiree, Arly Hamner, retired August 31, 2001. While it is clear that Hamner was covered under the City's group plan as an active employee, it appears from the record that Hamner did not continue coverage under the City's group plan upon retirement.

**{6}** On July 18, 2000, the City adopted Ordinance No. 624 in which the City opted to be included in coverage under the New Mexico Retiree Health Care Act (NMRHCA), effective January 1, 2001, pursuant to NMSA 1978, Sections 10-7C-1 to -19 (1990) (as amended through 2009). The city council noted in its July 11, 2000, meeting that the cost of insuring the retirees had doubled in the past year and "ha[d] the potential to break the [C]ity." Therefore, the City viewed opting into the New Mexico Retiree Health Care Authority's (the Authority's) system as an "alternative for the [C]ity to help its retirees with insurance." Subsequently, the City adopted Portales, N.M., Res. 00-01-12 (2000) (the Resolution), which stated both that retirees would be required to enroll for insurance coverage administered by the Authority and that the City would contribute to the retirees' premiums "at the same amount it is currently participating."

**{7}** In a letter dated November 21, 2000, the Authority notified Plaintiffs that their health insurance coverage through the City would terminate effective December 31, 2000, that Plaintiffs had the option of receiving coverage under the Authority, and that the Authority would subsidize a portion of Plaintiffs' monthly health insurance premiums. Plaintiffs also received a letter from the city clerk stating that the City had opted into the NMRHCA and that the City "intends to pay toward premiums for those . . . retirees already in the group health care plan." All Plaintiffs who had chosen to continue coverage under the City's group plan after retirement chose to transfer health insurance coverage to the new plan offered by the Authority.

**{8}** Coverage under the Authority's plan began on January 1, 2001, and the City began reimbursing Plaintiffs for portions of their Authority health insurance premiums. It is undisputed, however, that none of Plaintiffs received a seventy-five percent reimbursement from the City for their Authority premium billing. Instead, the City reimbursed Plaintiffs

between fifty and fifty-six percent of their health insurance premiums.  Despite the City's lower reimbursement amounts, Plaintiffs continued to pay nearly the same amount for their portion of monthly premium payments due to the subsidization of the premiums by the Authority.

**{9}**     On May 3, 2005, the City adopted Ordinance 654, which replaced the 1997 personnel policy with a new personnel policy that omitted Section 629.  At about this time, the City began discussing whether it was obligated to continue reimbursing Plaintiffs for their Authority health insurance premiums, although the City did continue to reimburse Plaintiffs after Section 629 was omitted from the new personnel policy.  On August 16, 2005, the city council voted against adopting a resolution stating that its adoption of the Resolution had, in effect, cancelled or rescinded any obligations by the City to the retirees previously offered by Section 629.  However, the next day, August 17, 2005, the city manager sent Plaintiffs a letter terminating the City's health insurance reimbursement payments to Plaintiffs.  The letter stated:

> In 2001, the City of Portales became a participating entity in the New Mexico Retiree Healthcare Act as approved by Ordinance 624.  Based on legal advice provided by our [c]ity [a]ttorneys, the City of Portales can no longer continue to reimburse you for a portion of the premium billing which you receive from New Mexico Retiree Healthcare for your coverage.

**{10}**     Plaintiffs brought suit on October 11, 2005, for declaratory judgment and breach of contract.  Although Plaintiffs later amended their claims, the parties agree that the October, 11, 2005, filing date is the relevant date for purposes of the City's defense under the statute of limitations.  Furthermore, for the purpose of our analysis, we will assume without deciding that the City's offer of continued coverage under its group plan and Plaintiffs' initial decision, pursuant to Section 629, to continue receiving health insurance coverage upon retirement created an agreement between Plaintiffs and the City consistent with Plaintiffs' allegations.

**STANDARD OF REVIEW**

**{11}**     We review a grant of summary judgment de novo. *Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204.  The standard for summary judgment in New Mexico is well established:

> Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment.  All reasonable inferences are construed in favor of the non-moving party.

*Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971

4

(internal quotation marks and citation omitted).

## DISCUSSION

**{12}** The parties agree that the controlling statute of limitations for Plaintiffs' claims against the City is three years. Section 37-1-24 provides:

> No suit, action or proceeding at law or equity for the recovery of judgment upon, or the enforcement or collection of, any sum of money claimed due from any city, town or village . . . arising out of or founded upon any ordinance, trust relation or contract . . . shall be commenced except within three years next after the date of the act of omission or commission giving rise to the cause of action, suit or proceeding.

The parties disagree, however, as to when the statute of limitations actually began to accrue. "In a breach of contract action, the statute of limitations begins to run from the time of the breach." *Smith v. Galio*, 95 N.M. 4, 6, 617 P.2d 1325, 1327 (Ct. App. 1980).

**{13}** Although the existence and terms of any alleged agreement between the City and Plaintiffs have yet to be determined by the fact finder, Plaintiffs' claims are wholly grounded in Section 629. Viewing Section 629 in the light most favorable to Plaintiffs, *see Montgomery*, 2007-NMSC-002, ¶ 16, it arguably contained two material obligations: (1) that the City would provide continuing health insurance coverage to retiring employees under its group plan; and (2) that the City, according to Plaintiffs' reading of Section 629, would reimburse Plaintiffs seventy-five percent of their health insurance premiums. As explained below, we agree with the district court that the statute of limitations bars Plaintiffs' causes of action to enforce these alleged obligations. However, because issues of fact remain as to the precise terms of an alleged agreement by the City to contribute toward Plaintiffs' health insurance premiums, *see Beggs*, 2009-NMSC-023, ¶ 22, we reverse the district court's ruling to the extent that Plaintiffs allege an agreement to reimburse for health insurance premiums at a rate lower than seventy-five percent.

### The City's Alleged Obligation to Provide Continuing Coverage Under the City's Group Plan

**{14}** Plaintiffs' complaint petitioned the district court to "declare the rights of . . . Plaintiffs to receive [retiree] health insurance from the City of Portales pursuant to [Section] 629." Plaintiffs also alleged that they had "an express agreement with the City of Portales to provide retiree health insurance benefits pursuant to the Personnel Policy Section 629." Plaintiffs do not dispute that: (1) the terms of Section 629 required the City to "offer employees upon their retirement the option of continuing their group health and life insurance coverage through the City's group plan, provided [the retiring employee was] enrolled in the group health plan at least one year prior to retirement"; (2) the City adopted the Resolution on December 19, 2000, requiring any retiree that had elected to continue

5

coverage under the City's group plan pursuant to Section 629 to transfer health insurance coverage to the Authority's plan; and (3) Plaintiffs previously covered under the City's group plan transferred their health insurance coverage to the Authority's plan effective January 1, 2001. Thus, the undisputed material facts establish that, contrary to Section 629, the City stopped offering or providing health insurance coverage under its group plan to retirees effective January 1, 2001. This alleged breach occurred more than three years before Plaintiffs filed suit.

**{15}** Plaintiffs argue, however, that the alleged agreement was not breached until August 17, 2005, because that is the date Plaintiffs received notice that the City intended to terminate its obligations under Section 629. As an initial matter, we note that the letter received by Plaintiffs makes no mention of Section 629. Rather, the letter references the transfer of retiree health insurance coverage to the Authority and states that the City will no longer reimburse retirees for a portion of the premiums billed by the Authority. Thus, this letter does not contradict the undisputed fact that the City ceased providing coverage under its own plan on January 1, 2001.

**{16}** Furthermore, we reject Plaintiffs' argument that the transfer of health insurance coverage to the Authority was "just a change in health insurance providers" such that Section 629 still governed the obligations of the parties after the transfer. The material promise of Section 629 was not an offer of health insurance coverage in general. Instead, it was an offer of continued health insurance coverage through the City's group plan. On November 21, 2000, the retirees were notified, "If you currently have coverage through the City of Portales, it will terminate December 31, 2000." Therefore, the City breached its alleged obligation under Section 629 to provide insurance coverage to Plaintiffs under the City's group plan when it stopped offering or providing this coverage effective January 1, 2001. *See Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, ¶ 17, 126 N.M. 69, 966 P.2d 777 (describing a material breach as the "failure to do something that is so fundamental to the contract that the failure to perform . . . defeats an essential purpose of the contract" (internal quotation marks and citation omitted)). To the extent Plaintiffs allege this breach as a basis for their claims, the statute of limitations bars those claims.

### The City's Obligation to Reimburse Plaintiffs Seventy-Five Percent of Their Health Insurance Premiums

**{17}** Plaintiffs further alleged that the agreement between them and the City obligated the City to reimburse them for seventy-five percent of their premiums. Again, Plaintiffs do not dispute that the City provided reimbursement payments of less than seventy-five percent after Plaintiffs were transferred to the Authority's plan as of January 1, 2001. Therefore, the three-year statute of limitations bars their claim of entitlement to seventy-five percent reimbursement.

**{18}** Plaintiffs attempt to dispute the effect of these lower reimbursement percentages. They argue that since the premiums were subsidized by the Authority and were therefore

6

lower than the City's group plan premiums, the "net effect" of the City's lower reimbursement percentages when combined with the Authority's subsidization resulted in the percentages covered for Plaintiffs remaining constant after the transfer of coverage. While this may be true, this argument is contrary to Plaintiffs' allegations and theories of recovery. Plaintiffs maintained that the City was obligated to reimburse them seventy-five percent of their premium billing, even for the Authority's premiums. Consistent with this allegation, Plaintiffs have admitted on multiple occasions that after the transfer to the Authority, they were no longer receiving the seventy-five percent reimbursement payments that they allege they were entitled to. Thus, regardless of the net effect, Plaintiffs' dispute regarding the effect of the City's reduced premium reimbursements does not create a genuine issue of material fact as to when the City stopped complying with its alleged obligations to reimburse Plaintiffs seventy-five percent of their premium billing. *See Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 803, 780 P.2d 627, 629 (1989) ("[The] mere argument or bare contentions of the existence of a material issue of fact is insufficient."). Therefore, if Plaintiffs wished to challenge their receipt of reimbursement percentages below seventy-five percent, this challenge should have occurred within three years of the premium reimbursement reduction in 2001.

**{19}** However, Plaintiffs may still be entitled to recover for the City's breach of an alleged agreement to reimburse them for *some* amount of their premiums. To the extent that the City argues that Plaintiffs are limited to their allegations regarding an entitlement to a seventy-five percent reimbursement rate, we disagree. As the Supreme Court recognized in the earlier appeal, there are genuine issues of material fact as to the precise terms of the agreement between Plaintiffs and the City. *See Beggs*, 2009-NMSC-023, ¶¶ 21-22. The fact finder could reasonably determine that the City's representations to Plaintiffs that it would contribute toward Plaintiffs' Authority premiums, albeit at a percentage amount less than seventy-five percent, were made pursuant to its alleged obligations under Section 629. For instance, the City's notification letter to Plaintiffs regarding the transfer of health insurance coverage to the Authority expressly stated that the City intended "to pay toward premiums for those . . . retirees already in the group health care plan." This statement was consistent with discussions by the city council leading up to the transfer, the language of the Resolution, and alleged statements by the city manager to Plaintiffs prior to the transfer that the City would contribute toward their Authority premiums at a reduced percentage. It is undisputed that these reduced reimbursement payments were not terminated until a few months before Plaintiffs filed suit and, therefore, Plaintiffs' claims based on entitlement to continuation of these payments are not barred by the statute of limitations.

**{20}** In remanding on this issue, we emphasize that Plaintiffs are not entitled to seek damages for the difference between the fifty to fifty-six percent reimbursement payments they were receiving and the seventy-five percent reimbursement payments they allege they are entitled to. Plaintiffs forfeited any challenge to the reduction in the City's seventy-five percent contributions by failing to file suit before the statute of limitations ran. But, as stated above, there are genuine issues of material fact as to whether the City obligated itself to continue reimbursing Plaintiffs for a lesser percentage of their Authority premiums

consistent with the amounts the City had previously contributed. This claim could not have begun to accrue until these reimbursement payments were terminated.

**Plaintiffs' Allegations Constitute a Single Wrong With Continuing Effects**

**{21}** Plaintiffs argue that even if the termination of coverage under the City's group plan and reimbursement payments of less than seventy-five percent could be construed as a breach of contract, each allegedly deficient reimbursement payment constituted an individual breach of contract and the statute of limitations began accruing against each payment when it became due. *See Pierce v. Metro. Life Ins. Co.*, 307 F. Supp. 2d 325, 328 (D. N.H. 2004) (stating the "universal rule that when an obligation is to be paid in installments the statute of limitations runs only against each installment as it becomes due" (internal quotation marks and citation omitted)). This "continuing violation" theory has found support in the context of claims regarding deficient retirement benefit payments. *See Adams v. City of Detroit*, 591 N.W.2d 67, 68 (Mich. Ct. App. 1998) (applying continuing violation theory to hold that the plaintiffs were entitled to proceed against the defendants for benefits allegedly withheld during the six years prior to the filing of the cause of action); *Harris v. City of Allen Park*, 483 N.W.2d 434, 436 (Mich. Ct. App. 1992) ("Pension benefits are similar to installment contracts and the period of limitation runs from the date each installment is due. Therefore, every periodic payment made that is alleged to be less than the amount due [the] plaintiffs . . . constitutes a continuing breach of contract and the limitations period runs from the due date of each payment.").

**{22}** Plaintiffs also refer us to *Plaatje v. Plaatje*, 95 N.M. 789, 626 P.2d 1286 (1981), as support for the proposition that the health insurance reimbursement payments should be considered "installment" payments such that a new breach of contract occurs upon each missed or deficient payment. In *Plaatje*, our Supreme Court held that the plaintiff was not barred by the statute of limitations from seeking to recover a portion of her ex-husband's military retirement benefits. *Id.* at 790-91, 626 P.2d at 1287-88. The plaintiff waited nearly five years after the divorce decree was entered to file suit seeking to establish her rights to the retirement benefits. *Id.* at 789-90, 626 P.2d at 1286-87. The Court concluded that the retirement benefits were a form of employee compensation earned during each month of employment and were received in the form of "monthly installments." *Id.* at 790-91, 626 P.2d at 1287-88. Therefore, "the statutory time limitations upon the plaintiff's right to sue for her portion of each installment commenc[ed] to run from the time each installment [became] due." *Id.*

**{23}** We are not convinced that *Plaatje* controls in the present situation. *Plaatje* involved a division of community property pension payments, not an alleged breach of an employment contract for continued health insurance coverage upon retirement. Similarly, the plaintiff's interest in the retirement benefits in *Plaatje* was undisputed since the defendant's right to receive the benefits matured while the couple was still married. *Id.* at 789, 626 P.2d at 1286. That is not the case here where, even setting aside the statute of limitations, there is considerable dispute as to whether Plaintiffs were entitled to indefinite,

8

continued health insurance coverage provided by the City pursuant to Section 629. *Cf. Brehm v. Sargent & Lundy*, 384 N.E.2d 55, 56 (Ill. App. Ct. 1978) ("[T]he stronger weight of authority has held, at least where pensions funded by governmental bodies are involved, that an action to determine the existence of the right to a pension necessarily precedes and is distinct, as regards the commencement of the period of limitation, from an action to recover installments[.]").

**{24}** Furthermore, it is not clear that the continuing violation theory has received such "universal" support as *Pierce* indicates. In fact, the rule has been criticized as undermining the purposes of the statute of limitations. *See Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir. 2007) (rejecting continuing violation theory on the basis that it would give rise to an indefinite limitations period); *Lang v. Aetna Life Ins. Co.*, 196 F.3d 1102, 1105 (10th Cir. 1999) ("Under [the] plaintiff's characterization [of her disability policy as an installment contract], her claim would have an indefinite lifespan. Such a result would undermine the overriding purpose of a statute of limitation[s].").  Still other courts have refused to apply it where the plaintiff's "claims are based on a single decision that results in lasting negative effects." *Novella v. Westchester Cnty.*, 661 F.3d 128, 146 (2d Cir. 2011) (internal quotation marks and citation omitted); *see Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 447 (S.D.N.Y. 2001) ("[T]he mere fact that the effects of a single, wrongful act continue to be felt over a period of time does not render that single, wrongful act a 'continuing violation.' ").

**{25}** This Court has previously rejected the continuing violation theory in the context of employment contracts where there has been a "single-wrong with continuing effects." *Tull v. City of Albuquerque*, 120 N.M. 829, 830, 907 P.2d 1010, 1011 (Ct. App. 1995) (internal quotation marks omitted). In *Tull*, the plaintiffs were transferred to supervisory positions and were therefore entitled to an increase in salary. *Id.* at 829, 907 P.2d at 1010. The plaintiffs filed suit seven years after their promotions, alleging that the defendant's failure to increase the plaintiffs' salaries in accordance with their expanded job duties was a breach of their employment contract. *Id.* Due to the seven-year lag between their promotion and the lawsuit, the plaintiffs argued that a new breach of contract occurred each time they received a paycheck that did not include the raise. *Id.* at 829-30, 907 P.2d at 1010-11. This Court held, however, that the continuing consequences of the breach, in the form of lower paychecks, had no effect on the statute of limitations where the initial failure to raise the plaintiffs' salaries constituted the actionable wrong. *Id.* at 830, 907 P.2d at 1011.

**{26}** We agree with the district court's reliance on *Tull* in this case. Similar to the defendant's conduct in *Tull*, the City made an initial decision to stop complying with its alleged obligations under Section 629. This failure resulted in continuing consequences to Plaintiffs in the form of lower reimbursement payments once Plaintiffs transferred their health insurance coverage to the Authority. However, these continuing consequences do not affect the statute of limitations where the continued negative effects are based solely on the City's failure to comply with the promises Plaintiffs allege are contained in Section 629. *See Tull*, 120 N.M. at 832, 907 P.2d at 1013 ("Although [the] wrong has continuing

9

consequences in the form of lower paychecks, the continuing effects do not extend the life of [the p]laintiffs' breach of contract cause of action, which is based solely on that initial refusal.").

**Equitable Estoppel**

**{27}**    Plaintiffs also argue that the City should be estoped from asserting a defense under the statute of limitations because of representations that Plaintiffs contend made them refrain from filing suit until after the statute of limitations deadline had expired.  We note that this issue was raised for the first time in Plaintiffs' motion for reconsideration, which the district court denied.  "We review the denial of a motion for reconsideration for an abuse of discretion." *Nance v. L.J. Dolloff Assocs., Inc.*, 2006-NMCA-012, ¶ 23, 138 N.M. 851, 126 P.3d 1215.

**{28}**    To the extent Plaintiffs' motion for reconsideration raised new matters that could have been raised during the summary judgment briefing but were not, such failure would provide a basis to affirm the district court's denial of the motion.  *See id.* ¶ 26 (holding that there was no abuse of discretion in denying a motion for reconsideration on the basis of fraudulent concealment where the matter was raised for the first time in the motion for reconsideration).  In addition, a close examination of the facts supporting Plaintiffs' claim for equitable estoppel leads us to conclude that the district court did not abuse its discretion in denying the motion for reconsideration.

**{29}**    Equitable estoppel may prevent a party from "asserting a statute-of-limitations defense if that party's conduct has caused the plaintiff to refrain from filing an action until after the limitations period has expired." *In re Adoption of Drummond*, 1997-NMCA-094, ¶ 13, 123 N.M. 727, 945 P.2d 457.  A plaintiff claiming equitable estoppel must show, in part, that it relied upon concealed or falsely represented facts or representations in a way that prejudicially altered its position. *See Vill. of Angel Fire v. Bd. of Cnty. Comm'rs of Colfax Cnty.*, 2010-NMCA-038, ¶ 21, 148 N.M. 804, 242 P.3d 371.

**{30}**    Plaintiffs cite six representations by the City that they argue should prevent the City from relying on the statute of limitations.  Four of these representations occurred in 2005, long after the statute of limitations had run on Plaintiffs' claims for breach of contract related to Section 629, and therefore they could not have caused Plaintiffs to refrain from filing suit to enforce those obligations.  Plaintiffs additionally point to the July 11, 2000, minutes of the city council meeting characterizing the City's opting into the Authority's health insurance system as "an alternative for the [C]ity to help its retirees with insurance" and the city clerk's November 27, 2000, letter to Plaintiffs stating that "the City of Portales intends to pay toward premiums for those . . . retirees already in the group health care plan and will do so for those retiring before July 1, 2003."  We fail to see how these representations were misleading or induced reliance by Plaintiffs causing them to refrain from filing suit. *See Molinar v. City of Carlsbad*, 105 N.M. 628, 631, 735 P.2d 1134, 1137 (1987).  By opting into the Authority's health care plan, the City did provide an alternative avenue for retiree

10

health care insurance. Furthermore, as the city clerk's letter stated, the City then began paying toward Plaintiffs' premiums after the transfer, just not at the percentage desired by Plaintiffs. Plaintiffs were clearly aware of that fact before the transfer and once the City actually started making reimbursement payments in amounts less than seventy-five percent. Therefore, the district court properly acted within its discretion in denying Plaintiffs' motion for reconsideration.

**{31}** Because we partially reverse the district court, we briefly address the City's contentions that the Bateman Act and the doctrine of ultra vires provide additional grounds for affirmance of the district court's grant of partial summary judgment based on the statute of limitations. Both of these defenses were the subject of separate motions for summary judgment by the City directed toward all plaintiffs, not just the eight before us. Both motions were also separately denied by the district court.

**{32}** It is within this Court's discretion to affirm the district court under the "right for any reason" doctrine, but we will not exercise such discretion if it would result in unfairness to the appellant. *See Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. In this case, it would not be appropriate to affirm the district court against these eight plaintiffs on the basis of defenses raised in denied motions for summary judgment directed toward all plaintiffs. Furthermore, because the Supreme Court in the prior appeal held that there were issues of fact as to the exact terms of an alleged agreement between the City and Plaintiffs, the subject matter of the City's additional defenses is more properly addressed in conjunction with a determination of whether a contract actually existed. Therefore, we decline the City's invitation to revisit the district court's ruling on these issues.

**CONCLUSION**

**{33}** We affirm summary judgment to the extent it determined that Plaintiffs' claims regarding alleged obligations by the City pursuant to Section 629—(1) to continue coverage under the City's own plan, and (2) to reimburse Plaintiffs seventy-five percent of their health insurance premiums—were barred by the statute of limitations. However, we reverse summary judgment and remand Plaintiffs' claims to the extent they allege that the City was obliged to reimburse Plaintiffs for their Authority premiums at amounts less than seventy-five percent.

**{34}  IT IS SO ORDERED.**

_____
  **CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

11

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _Beggs v. City of Portales_, No. 31,475**

**APPEAL AND ERROR**
Remand
Standard of Review

**CIVIL PROCEDURE**
Equitable Claims or Defenses
Estoppel
Reconsideration
Statute of Limitations
Summary Judgment

**CONTRACTS**
Breach

**EMPLOYMENT LAW**
Employment Contract
Health, Pension, and Retirement Benefits

**INSURANCE LAW**
Health Insurance
Reimbursement

**JUDGES**
Abuse of Discretion