NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4585
_____

PHILIP A. DIX, Individually and on behalf
of all others similarly situated,

Appellant

v.

TOTAL PETROCHEMICALS USA, INC., PENSION PLAN
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 10-cv-03196)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
September 26, 2013

Before:  AMBRO, FISHER, and HARDIMAN, *Circuit Judges*.

(Filed: September 30, 2013)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Appellant Philip A. Dix brought a putative class action against Appellee Total

Petrochemicals USA, Inc., Pension Plan (the Plan) on June 23, 2010, alleging that the

Plan violated the Employee Retirement Income Security Act (ERISA) when it failed to include the present value of cost-of-living adjustments (COLAs) in its lump sum calculations. The District Court determined that Dix's claim was time-barred and entered summary judgment in favor of the Plan. We will affirm.

I

Because the District Court thoroughly described Dix's pension plan, the documents that he received, and the history of this case in its opinion below, *see Dix v. Total Petrochemicals USA, Inc., Pension Plan*, No. 10-3196, 2012 WL 6005011, at *1−4 (D.N.J. Nov. 30, 2012), and because we write for the parties, we provide only a brief explanation of the relevant dates and documents in this case.

Dix began working for Rohm & Haas Company in 1967, and participated in the Rohm & Haas Pension Plan (R&H Plan) throughout his employment there. He received the R&H Plan Summary Plan Description (SPD) in 1994. According to the SPD, when Dix chose to retire, he could choose from several different types of monthly annuity payments, or he could elect to receive a lump sum payment. The document explained that these different options were available so that "you can arrange to have your pension paid in the way that best meets your individual needs," and that "the equivalent lifetime value of your pension is the same under all forms." App. 59. The document also provided that participants who chose monthly annuity payments would receive annual cost-of-living increases, but noted that those increases "apply only to monthly pension benefits," and

2

informed the reader: "*You forgo cost-of-living increases if you take a lump sum pension.*"
App. 61 (emphasis in original).

As a result of corporate transactions and name changes, Dix subsequently became employed by Elf Atochem, N.A., Inc., and then by ATOFINA Chemicals, Inc., and the Plan assumed responsibility for the R&H Plan's obligations to Dix.

In 2003, Dix was given the option to participate in his company's Early Retirement Incentive Plan. Between August and November 2003, Dix received several Statements of Estimated Benefits that described his payment options. These documents provided estimates of the amount that Dix would receive per month under the different annuity payment options, and an estimate of the amount that Dix would receive if he selected the lump sum payment. Like the SPD, these documents explained that Dix would receive annual COLAs if he selected to receive monthly annuity payments, but further provided: "**You will not be entitled to this cost-of-living adjustment if you elect (with your spouse's written consent) to receive your RandH accrued benefit in the form of a lump sum.**" App. 136, 139, 142, 169 (emphasis in original).

No later than November 14, 2003, Dix received a letter dated November 10, which informed him that if he chose to receive a lump sum payment, he would receive $505,495. To elect the lump sum payment, Dix and his wife had to sign a consent form, stating that Dix elected to receive "a single payment of the actuarial equivalent present value of the benefit that [he] would otherwise be entitled to receive in the form of monthly annuity

3

payments" and acknowledging that they would have "no right or entitlement to any future benefits from the Plan" after the $505,495 payment. App. 50. The consent form also referenced Article IV of the Atofina Plan, the document governing Dix's pension coverage, which, in an appendix, provided a description of COLAs similar to the ones found in the Statements of Estimated Benefits and the 1994 SPD.

Dix and his wife signed the consent form before a notary on November 14, 2003. (*Id.*) Dix's application to participate in the early retirement program was accepted on December 18, 2003, and $505,495 was credited to Dix's individual retirement account on January 12, 2004.

In August 2007, the Court of Appeals for the Seventh Circuit issued an opinion holding that the R&H Plan's failure to include the present value of COLAs in pensioners' lump sum distributions violated ERISA. *See Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710 (7th Cir. 2007). On December 7, 2009, Dix filed an administrative claim with the Plan based on the Plan's failure to include the present value of expected COLAs in his lump sum payment. The claim was denied on April 5, 2010. Dix then filed an internal administrative appeal, which was denied on June 18, 2010. Dix received notification of this denial on June 21, 2010, and he filed suit in the District Court for the District of New Jersey on June 23, 2010, alleging that the Plan violated ERISA by failing to include the present value of COLAs in its lump sum calculation. After completing limited discovery, the Plan filed a motion for summary judgment on the basis that the

4

claim was untimely.

The District Court determined that New Jersey's six-year statute of limitations for breach of contract was applicable to Dix's claim. It explained that a non-fiduciary claim for benefits under ERISA accrues when there has been a clear repudiation of benefits, and held that Dix's claim accrued no later than November 14, 2003. By that date, Dix had received the letter informing him that he would receive a lump sum payment of $505,495, he had acknowledged that he would not receive any future benefits by signing the consent form, and he had received multiple documents discussing the receipt of COLAs. Because Dix did not file his administrative claim until December 7, 2009, the District Court dismissed his claim as untimely. He appealed.

## II[1]

Although Dix argued below that his claim was not governed by any statute of limitations,[2] neither party now disputes that New Jersey's six-year statute of limitations applies. They disagree, however, as to when Dix's claim accrued. The Plan argues that Dix's claim accrued no later than November 14, 2003, when Dix signed the consent form

---

[1] The District Court had jurisdiction in this case under 29 U.S.C. § 1132(e). We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise de novo review over a grant of summary judgment, *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007), and we will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

[2] As noted by the District Court, this claim is contrary to established precedent. *See Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005).

required to receive a lump sum payment. Dix contends, primarily, that his claim did not accrue until June 18, 2010, when his administrative claim was denied. He also argues in passing that equitable tolling is appropriate in this case. We address each argument in turn.

A

In the ERISA context, a non-fiduciary cause of action will generally accrue when a party's claim for benefits has been formally denied. *See Romero v. Allstate Corp.*, 404 F.3d 212, 222−23 (3d Cir. 2005). Under the "clear repudiation" rule, however, claims will accrue before a formal denial when there has been "a repudiation of the benefits by the fiduciary which was *clear* and made known [to] the beneficiary." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520−21 (3d Cir. 2007) (emphasis in original). In *Miller*, for example, we found that the underpayment of a disability award triggered the relevant statute of limitations because: (1) the plan's determination that the beneficiary should receive less than his full entitlement was "effectively a partial denial of benefits," and thus a "repudiation," *id.* at 521; and (2) a reasonable person in the beneficiary's position would have been put on notice of the repudiation when he received his first miscalculated benefit award, *id.* at 521−22.

The Plan repudiated Dix's claim when it informed him in the November 10 letter and consent form that, if he elected to receive a lump sum payment, he would receive a one-time payment of $505,495 and he would not receive any future benefits. This was

"effectively a partial denial of benefits" that Dix now claims he was owed. To the extent that Dix argues that there was no "repudiation" because the Plan did not follow the formal procedures for denying a claim, this argument is foreclosed by *Miller*. *See id*. at 520−21.

The issue, then, is whether the repudiation was "clear" by November 14; that is, whether Dix "kn[ew] or should [have known] he ha[d] a cause of action." *Id*. at 521. Dix claims at the time he signed the consent form he did not know, and had no reason to know, that the present value of COLAs was not included in the lump sum figure. Dix asserts that the Plan's statements about cost-of-living adjustments and increases were, at best, ambiguous—particularly in light of its promise that the lump sum payment and the annuities would have the same actuarial value. Dix recognizes that, under the plain language of the SPD and the Statements of Estimated Benefits, he was not entitled to any cost-of-living payments *after* he received the lump sum payment—that is, he would not receive future "adjustments" or "increases." However, he argues that the documents he received could be interpreted to mean that the present value of COLAs that he would receive should have been included in the lump sum figure. The Plan, in contrast, argues that the language in the SPD, the Statements of Estimated Benefits, and the Atofina Plan (which was never sent to Dix, but was referenced in the consent form that he signed) lends itself to only one interpretation: COLAs would not be included in any form if he chose a lump sum payment.

We agree with the District Court that Dix knew or should have known about his

7

injury by November 14, 2003, at the latest. Given its "broad, beneficiary-protective goals," we have recognized that "ERISA does not require plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential plan errors and abuses." *Miller*, 475 F.3d at 522 (quoting *Romero*, 404 F.3d at 224) (internal quotation marks omitted). Nevertheless, we require claimants to exercise reasonable diligence in investigating the accuracy of a benefit determination because, as we explained in *Miller*, "a statute of limitations not based on reasonable discovery is effectively no limitation at all." *Id*.

Here, Dix received notification that his lump sum payment would be $505,495 in a letter dated November 10, 2003. He knew, based on the consent form that he received with the letter and signed in front of a notary on November 14, 2003, that by choosing the lump sum payment he would have "no right or entitlement to any future benefits from the Plan." App. 50. The Statement of Estimated Benefits that he received along with the letter described the COLAs that he would receive if he were to elect a monthly annuity, and explained: "**You will not be entitled to this cost-of-living adjustment if you elect (with your spouse's written consent) to receive your RandH accrued benefit in the form of a lump sum).**" App. 169 (emphasis in original). This warning was similar to warnings in the 1994 SPD, *see* App. 61 ("*You forgo cost-of-living increases if you take a lump sum pension.*" (emphasis in original)), and to the warnings in the Atofina Plan.

8

Although Dix argues that the consent form renders these warnings ambiguous, the statements—which were conspicuously displayed in italics and boldface type in the original documents—raise significant red flags at the very least. We recognize that despite the District Court's conclusion that the language in the documents that Dix received was "clear and . . . only susceptible to one reasonable interpretation" in this case, *Dix*, 2012 WL 6005011, at \*10, the same judge acknowledged some "arguable ambiguity" in the plan language in a subsequent case. *See Lightfoot v. Arkema, Inc. Retirement Benefits Plan*, No. 12-773, 2013 WL 3283951, at \*7 (D.N.J. June 27, 2013). But even if this language could be subject to two different interpretations, the most reasonable interpretation of the emphasized text is that a person selecting the lump sum payment will not receive any compensation for COLAs at all. A reasonably diligent person, who had received a calculation of his lump sum award and was deciding whether to accept it, easily could have investigated whether that estimate included the actuarial value of expected COLAs by calling the phone number provided in the November 10 letter. *See* App. 147 (providing a number to call "[i]f any of this information is not clear, or you have any questions"). There is no evidence that Dix conducted any such investigation before signing the consent form.[3]

_____

[3] Although Dix presents several pieces of additional evidence that he claims demonstrate ambiguity, none of it affects our analysis. First, Dix claims that the SPD distributed in 2002—which he did not receive—states more clearly that lump sum recipients would not receive the value of expected COLAs. He suggests that the "revisions to [the] Plan and SPD to address, specifically, whether COLAs are included in

Contrary to Dix's suggestion, there is also no evidence that Plan employees would have misled him or avoided answering his question had he asked whether the present value of COLAs was included in his lump sum payment. The SPD distributed by the R&H Plan in 2002 stated in no uncertain terms that the actuarial value of expected COLAs was not included in the lump sum payment. *See* App. 119 ("The COLA only applies to monthly payments; it does NOT apply if you receive your benefit in the form of a cash lump sum. The COLA is a benefit enhancement which is not part of your Accrued

the 'accrued benefit' clearly support the conclusion that the 1994 SPD did not 'clearly repudiate' plaintiff's claim." Dix Br. at 62. Although we agree that the 2002 SPD discusses the issue in more detail, this does not alter our conclusion that the language in the documents that Dix did receive was clear enough to put him on notice of the repudiation.

Second, Dix claims that the 1994 R&H SPD was judicially determined not to have clearly repudiated plaintiff's claim in *Williams v. Rohm & Haas Pension Plan*, No. 4:04-cv-0078, 2008 WL 4628114 (S.D. Ind. Oct. 17, 2008). This argument, however, mischaracterizes the *Williams* opinion; there, the district court found that the defendant was estopped from arguing clear repudiation because that argument was inconsistent with prior theories that it had advanced. *Id*. at *4.

Finally, Dix suggests that the Plan's actuary, Towers Perrin, stated in a letter "that the COLA provisions in the R&H Plan provided 'no clear guidance' on the COLAs and lump sums." Dix. Br. at 62. This argument mischaracterizes the Perrin letter, which was prepared because the treatment of employees who become disabled was not clearly addressed in the R&H Plan. Perrin explained that "[i]t appears that these employees are treated as terminated participants (or early retirees, if applicable)." App. 102. In considering whether disabled employees should receive a COLA benefit, Perrin explained that there was "no clear guidance"—because the plan does not address disabled employees—but that disabled employees who elected to take a lump sum probably should not receive a COLA benefit. App. 104.

Benefit under the Plan and is not required by law.").[4]  Although Dix presented some evidence that the Plan delayed answering questions about COLAs between 2007 and 2009, App. 148−53, this occurred only after the Seventh Circuit issued its opinion in *Williams*, which held that plans were required to include COLAs in lump sum distributions under ERISA.  *See* App. 149 (email asking, in September 2007, whether the ruling in *Williams* "affects our pension lump sum distribution").  There is no reason to believe, as Dix suggests, that he would have had to hire an attorney or an actuary to discover the purported mistake in 2003.

Because the Plan repudiated Dix's claim to any additional benefits beyond the $505,495 figure in the November 10 letter, and requiring Dix to read the plan documents by the time that he signed the consent form and inquire into whether his lump sum payment was accurately calculated "does not impose on him a burdensome oversight role," *Miller*, 475 F.3d at 523, we agree with the District Court that Dix's claim accrued no later than November 14, 2003.

B

Dix also argues that, because the Plan misled him into believing that it had granted his claim in full and did not provide him with the notice required when formally denying a claim, the statute of limitations should have been equitably tolled.  However, Dix has

---

[4] Dix did not receive a copy of this document because he was no longer an R&H Plan participant.  *See* Doc. 62-1 at 20−21 ¶ 30.

not shown that extraordinary circumstances exist here, and, as discussed above, if Dix had exercised reasonable diligence he would have discovered his cause of action no later than November 14, 2003. Thus, equitable tolling is inappropriate. *Cf. Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 679−80 (1st Cir. 2011) ("Equitable tolling suspends the running of the limitations period if the plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to his claim." (citation, internal quotation marks, and alteration omitted)); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.").

III

For the foregoing reasons, we will affirm the District Court's summary judgment.